NO. COA13-1035

NORTH CAROLINA COURT OF APPEALS

Filed: 15 April 2014

STATE OF NORTH CAROLINA


v.                                    Wake County
                                      No. 12 CRS 200356
KENNETH CARROLL MEE


Appeal by defendant from judgments entered 27 March 2013 by Judge Michael J. O'Foghludha in Wake County Superior Court. Heard in the Court of Appeals 4 February 2014.

*Attorney General Roy Cooper by Special Deputy Attorney General David Efird for the State.*

*W. Michael Spivey for defendant-appellant.*


STEELMAN, Judge.


Where defendant waived the right to appointed counsel, retained and then fired counsel twice, was briefly represented by an assistant public defender, and refused to state his wishes with respect to representation, instead arguing that he was not subject to the court's jurisdiction and would not participate in the trial, and ultimately chose to absent himself from the

courtroom during the trial, defendant forfeited his right to the assistance of counsel.

## I. Factual and Procedural Background

On 5 January 2012 defendant was arrested for trafficking in cocaine by possession of more than 28 but less than 200 grams of cocaine, possession of 573 grams of marijuana, and maintaining a dwelling for keeping and selling controlled substances. He was indicted for these offenses on 9 July 2012. Defendant appeared before at least four superior court judges for pretrial proceedings and made inconsistent statements regarding his representation by counsel, including waiver of appointed counsel, hiring and then discharging counsel on two occasions, representation by an assistant public defender, and asserting an unsupported legal theory that he was not subject to the court's jurisdiction.

On 25 March 2013, defendant was before the trial court for trial. He refused to state a clear position regarding counsel and told the trial court that he did not want his retained counsel to represent him at trial, did not want to represent himself at trial, did not want standby counsel to take any role in the trial, and would not remain in the courtroom or otherwise "participate" in his trial. Defendant refused to remain in the

courtroom and was confined to a holding cell near the courtroom during trial.

The State's evidence generally showed that law enforcement officers arrested defendant at his home on 5 January 2012 for possession of cocaine, marijuana, drug paraphernalia, and firearms. Defendant waived his *Miranda* rights, and gave a statement confessing to the charged offenses.[1] Defendant did not question the State's witnesses or offer any evidence. On 26 March 2013 the jury returned verdicts finding him guilty of trafficking in cocaine by possession of more than 28 but less than 200 grams of cocaine, possession of 573 grams of marijuana, and maintaining a dwelling for keeping and selling controlled substances.

The trial court sentenced defendant to a term of 35 to 51 months imprisonment for trafficking in cocaine, to begin at the expiration of three consecutive sentences of thirty days for contempt of court. The trial court imposed concurrent sentences of 6 to 17 months for the remaining offenses, and suspended each sentence, with concurrent terms of 30 months' probation to begin when defendant was released from prison. On 30 April 2013 the

---

[1] The sole issue raised on appeal concerns the circumstances under which defendant proceeded to trial *pro se*. Given that defendant does not otherwise challenge the conduct of the trial or the factual basis for the charges, we find it unnecessary to set out further facts of the case in detail.

trial court corrected defendant's sentence for trafficking in cocaine to a term of 35 to 42 months in prison.

Defendant appeals.

## II. Standard of Review

Defendant argues on appeal that his constitutional right to the assistance of counsel was violated. "The right to counsel is guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I of the North Carolina Constitution." *State v. Montgomery*, 138 N.C. App. 521, 524, 530 S.E.2d 66, 68 (2000) (citing *State v. McFadden*, 292 N.C. 609, 234 S.E.2d 742 (1977)). The "standard of review for alleged violations of constitutional rights is *de novo*." *State v. Graham*, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009) (citation omitted), *disc. review denied*, 363 N.C. 857, 694 S.E.2d 766 (2010).

## III. Forfeiture of the Right to Counsel

## A. Standard of Review

"'[A]n accused may lose his constitutional right to be represented by counsel of his choice when he perverts that right to a weapon for the purpose of obstructing and delaying his trial.'" *Montgomery*, 138 N.C. App. at 524, 530 S.E.2d at 69 (quoting *McFadden* 292 N.C. at 616, 234 S.E.2d at 747).

> Although the loss of counsel due to defendant's own actions is often referred to

> as a waiver of the right to counsel, a better term to describe this situation is forfeiture. "Unlike waiver, which requires a knowing and intentional relinquishment of a known right, forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right."

*Montgomery* at 524-25, 530 S.E.2d at 69 (quoting *United States v. Goldberg*, 67 F.3d 1092, 1100 (3d. Cir. 1995)). In *Montgomery*, this Court held that the defendant's "purposeful conduct and tactics to delay and frustrate the orderly processes of our trial courts simply cannot be condoned. Defendant, by his own conduct, forfeited his right to counsel[.]" *Id.* at 525, 530 S.E.2d at 69 (citation omitted).

### B. Analysis

Review of the defendant's actions during the fourteen months between his arrest and trial reveals that he engaged in behavior which resulted in the forfeiture of the right to counsel. At his first appearance in district court on 6 January 2012, defendant signed a waiver of appointed counsel. On 6 June 2012 defendant was again in district court, where he refused to check any of the options on a waiver of counsel form and signed the form "All rights reserved UCC-1-300 Kenneth Mee Bey." Handwritten notes on the waiver form indicate that defendant "refused to address [the] court about counsel," and stated that

"he did not recognize the Court." The notes also indicate that defendant previously had retained attorney Alton Williams to represent him, but that Mr. Williams was allowed to withdraw because he "could not ethically proceed" to pursue motions that defendant had filed.

On 30 July 2012 defendant appeared in superior court for arraignment before Judge Donald W. Stephens. Initially, he denied being Kenneth Mee, and stated that he was "Kenneth Mee Bey, a prior person" who was a "sovereign from [Moorish] descent" and was "not a Fourteenth Amendment citizen." However, Judge Stephens ruled that if defendant would not acknowledge his identity his bond would be revoked. Defendant then verified for the court that he was Kenneth Mee. Defendant told the court that he did not have an attorney, did not intend to hire one, and did not want the court to appoint a lawyer, but that he did not intend to proceed *pro se* because he was "improper personnel." Defendant refused to enter a plea and Judge Stephens entered a plea of not guilty on his behalf, prompting defendant to ask for the judge's "oath of office" and "bonding number" so that he could file "a counterclaim in Federal Court." When defendant continued to argue with Judge Stephens, the judge revoked his bond and ruled that, because defendant would not sign a waiver

of the right to counsel, he was appointing the public defender's office to represent him.

On 22 August 2012, defendant was again before Judge Donald Stephens. At this hearing he was represented by Stephanie Davis, an assistant public defender, who asked Judge Stephens to reconsider defendant's bond. However, the court ruled that, after reading defendant's *pro se* filings, he was concerned that, given defendant's contention that the laws of North Carolina and of the United States did not apply to him, defendant would not appear for trial. Defendant would not allow his attorney to enter a plea on his behalf and informed the court that he objected to the court's jurisdiction. When defendant refused to enter a plea, Judge Stephens entered a plea of not guilty on his behalf, and denied defendant's request to modify the conditions of release.

On 25 October 2012, Mr. Williams filed a notice of representation indicating that defendant had again retained him as counsel, and Ms. Davis was permitted to withdraw. On 29 October 2012 defendant was in court before Judge Paul Gessner, at which time Mr. Williams entered "a general appearance on [defendant's] behalf[.]" The prosecutor informed Judge Gessner that defendant had previously submitted "filings where the defendant was invoking the UCC and claiming he was not a citizen

of the State of North Carolina and not subject to the laws of this state and the jurisdiction of the court." Mr. Williams responded that defendant was "submitting himself to the jurisdiction of the court" and would withdraw his motions challenging the court's jurisdiction. Judge Gessner declined to modify the conditions of defendant's bond.

Mr. Williams filed a motion for continuance on 30 November 2012, which was granted by Judge Howard E. Manning, Jr., on 12 December 2012. However, when defendant was next in court on 4 February 2013, before Judge G. Wayne Abernathy, the prosecutor informed the court that defendant had revived his challenge to the court's jurisdiction. When Mr. Williams stated that he was "ready to proceed" and "prepared to represent" defendant at trial, defendant objected:

> THE COURT: What's the objection?
>
> DEFENDANT: I'm the proper person. I'm defending myself. He is not my attorney. I'm a sovereign nation. He is not my attorney.
>
> THE COURT: So you're telling me that you do not want Mr. Williams to represent you in this matter?
>
> DEFENDANT: I'm telling you the only issue for me today is my personal jurisdiction. I'm making a special appearance. I'm showing the Court the sole reason for my appearance is to establish personal jurisdiction. . . .
>
> . . .

THE COURT: . . . The first question is are you representing to me that Mr. Williams is not your lawyer?

DEFENDANT: Yes, sir.

. . .

THE COURT: So that means that you are discharging Mr. Williams?

DEFENDANT: I am not contracting with the State of North Carolina. He's an agent of the State so he's not --

THE COURT: He's your attorney right now.

DEFENDANT: No, sir, he's not.

. . .

THE COURT: . . . Anyway, you understand you're charged with trafficking in cocaine by possession?

DEFENDANT: No, sir, I do not understand that charge. No, sir, I do not.

THE COURT: What is it you do not understand?

DEFENDANT: I do not understand what you're trying to charge me with. The only reason I'm here for is the jurisdiction.

THE COURT: I'm going to get to the jurisdiction.

DEFENDANT: I don't understand none of the charges . . . Nothing you're saying to me that pertains to whatever you're trying to pertain to, I'm not in that jurisdiction so, no, sir, I don't understand none of that.

THE COURT: Well, sir, the charge is of trafficking cocaine by possession --

DEFENDANT: I don't know what you're talking about.

THE COURT: You're charged with possession and intent to sell and deliver marijuana.

DEFENDANT: The only thing I'm here for is the jurisdiction.

THE COURT: You're also charged with maintaining a dwelling place for keeping and selling of a controlled substance. And, apparently, you have confessed to those crimes or there's certainly evidence that you have--

DEFENDANT: No, sir. It wasn't me.

. . .

THE COURT: So you're charged with three felonies. And one of them is extraordinarily serious because there's a minimum sentence that I cannot go below. And I will tell you that most people who choose to represent themselves make a serious mistake. Very rarely are they found not guilty. I just want you to be aware of that. You don't have to agree with that. I just want you to be aware of that. So it's your position you want to represent yourself, and I will allow you to do that. Are you willing to sign a waiver of counsel?

DEFENDANT: No, sir. I will not sign any contracts. I will not take any oaths.

THE COURT: All right. I'm going to appoint Mr. Williams as standby counsel just in case you have any questions, but you're responsible for your own case. . . .

DEFENDANT: I'm only here for jurisdiction. I don't know what you're talking about when you say trial.

THE COURT: Your trial.

DEFENDANT: No, sir.

THE COURT: But I will entertain your motion . . . to dismiss for lack of jurisdiction.

DEFENDANT: . . . I filed three motions that were never answered. Are you answering here in the courtroom? They have to be answered in writing. . . . I object to this whole proceeding, sir. . . . [T]he only reason I'm here is, like I said, the jurisdiction. . . . Anything else you say, I object.

THE COURT: Well, you can object. I note your objection. I want you to understand that if you're not ready to participate we can send you back to jail and sit there until you're ready.

DEFENDANT: Well, send me back to jail because I'm not - I will never participate in this - what is your status? Who are you? What is your nationality?

THE COURT: Do you want to argue a motion on lack of jurisdiction?

DEFENDANT: No. . . . I would like to get that information.

THE COURT: I've asked you --

DEFENDANT : No, sir, . . . [O]n the record and for the record I have asked for the judge – What'd say your name was?

THE COURT: Abernathy.

DEFENDANT: - for his oath of office, his bonding license, and what nationality he is. And you're saying now you're not going to tell me?

THE COURT: I'm saying that you don't get to ask me questions.

. . .

DEFENDANT: . . . [A]s far as your proceedings go, you're talking about sending me back to jail. That's what you will have to do because I will object, and I will not contract under UCC 1-308-1. I will not contract. And all law is contract. . . . I object on the grounds I am Alique Mee Bey, executive beneficiary on behalf of Kenneth Mee. I am a free indigenous man in full life and peacefully inhabited which duly arise under the United Nations Declaration of Rights of Indigenous People . . . Once jurisdiction is challenged, the Court cannot proceed when it clearly appears that the court lacks jurisdiction[.] . . .

THE COURT: All right. You have argued I do not have jurisdiction over you[.] . . . U.C.C. law is a civil contract issue. It does not apply in criminal court. I have read all of your motions, and, sir, each and every one of them is denied. . . . Are you prepared to go forward with your trial?

THE DEFENDANT: No, sir. We will not go forward. I told you I understand no trial. I'm only here for jurisdiction. That's the only reason I'm here. I'm not here to try no case. I'm not here for no understanding, no charges. I don't even know what you're talking about. I'm here for one reason.

THE COURT: Mr. Williams, have you presented copies of his indictments to him?

MR. WILLIAMS: He's seen everything.

THE COURT: He's informed of the charges?

DEFENDANT: No, sir. I object.

THE COURT: . . . [Y]our objection is noted.

DEFENDANT: I will keep objecting. Sir, I'm only here for jurisdiction. That's it.

THE COURT: And your motion to deny jurisdiction is denied.

. . .

DEFENDANT: Like I said, I object to anything you say about a charge. I don't know what you're talking about.

THE COURT: That's fine. Your objection's in the record. Now we're going to move on.

DEFENDANT: We ain't going to move on. I'm not going to proceed.

THE COURT: You understand you'll sit in jail until you're ready to proceed?

DEFENDANT: You do what you have to.

. . .

PROSECUTOR: Just so we're clear, Judge, the case is continued off this calendar. Mr. Mee has fired his attorney, Mr. Williams, and is proceeding *pro se*.

THE COURT: He's proceeding *pro se*. The Court makes a finding of fact that the Court tried to get Mr. Mee to sign a waiver of counsel. He refused to do so, and he is now proceeding *pro se*. The Court appointed Mr. Williams as standby counsel. The Court explained to him that Mr. Williams does not conduct the trial but would be available for questions or advice from him. And the Court therefore orders that Mr. Williams is relieved as counsel of record, but he is reserved as standby counsel and that the - the Court finds that the defendant has knowingly and intelligently waived his right

to counsel, chooses not to use counsel, and has stated a number of times that he represents himself and he contests the jurisdiction of the Court. The Court also notes that the defendant's conduct is somewhat contemptuous, but the Court took no action on that at this time.

. . .

THE COURT: We're back on the record in the matter of the State versus Kenneth Carroll Mee[.] . . . [A]ny time from today until the defendant is ready to be tried is to be excluded . . . in calculating any times for a speedy trial motion because the State was ready to proceed, his lawyer was ready to proceed, and the defendant prohibited the trial of this case by refusing to accede to the jurisdiction of the Court and stated unequivocally that he was going to keep objecting and made it impossible for the Court to try the case.

Defendant appeared for trial on 25 March 2013, before Judge Michael J. O'Foghludha. The prosecutor summarized the procedural history of the case and informed the trial court that the State was prepared to proceed. The trial court tried unsuccessfully to determine whether defendant wished to appear *pro se* or with the assistance of counsel:

THE COURT: . . . Mr. Mee, what's the status of your attorney situation right now, sir, are you representing yourself?

DEFENDANT: I am myself. I'm an improper person, sir, so I have no attorney. I'm talking for myself.

THE COURT: Thank you. So you're representing yourself as far as this proceeding.

DEFENDANT: I'm an improper person. I am myself. I don't have to represent myself. I'm talking for myself.

THE COURT: . . . Mr. Williams, let me ask you, sir. I just noted in the file that you have a general appearance back in October 15th of 2012.

MR. WILLIAMS: That's correct.

THE COURT: But you are not representing Mr. Mee at the moment; is that correct?

MR. WILLIAMS: No, Judge. I was appointed standby counsel by Judge Abernathy.

. . .

DEFENDANT: I want to object to the charges that Mr. Wilson has brung against me. The only reason I'm here, sir, is for a special appearance for jurisdiction, showing up for this Court for the sole purpose of contesting the Court's jurisdiction over me. My status shows evidence contrary to this Court's presumption, therefore, this Court's presumption of assertion of jurisdiction over me disappears[.] . . .

. . .

DEFENDANT: For the record and on the record, the only reason why I'm here is for personal jurisdiction. . . . This Court has no jurisdiction. . . . Furthermore for the record and on the record, I am . . . Malik Bey, executive beneficiary on behalf of the trust of Kenneth Mee. I am an indigenous man in full light. I will not participate in any proceedings brought against me by this fictitious corporation which is the State of North Carolina. . . . [N]or will I stand under any fictitious contracts forced

against me. I will not take any oaths, but I will affirm the truth. . . .

. . .

THE COURT: Yes, sir. Mr. Wilson, I was looking at the indictment, and it appears that Mr. Mee is indicted under 90 -

DEFENDANT: I object.

THE COURT: I understand, sir, overruled. . . . If you wouldn't mind, just let me talk, and I'll be happy to let you talk.

DEFENDANT: I'm going to object to anything that doesn't perceive jurisdiction. So I'm not going to participate in anything. . . . I have a writ of *habeas corpus* claim on the State, and he has a copy there. . . . [Y]ou might as well send me back to jail. Because what I'm going to do is just include you . . . in the federal claim that I'm going to file against Mr. Williams.

THE COURT: That's fine. Let me just stop you. Mr. Mee appears to be indicted under 90-95(h)(3) for 28 grams or more, but less than 200 grams –

DEFENDANT: I object.

THE COURT: Sir, I'm going to give you a little warning here. I don't mind listening to you, and I will let you talk, but please don't interrupt me, because I'm trying to talk. . . . Mr. Wilson, Mr. Mee appears to be indicted under 90-95(h)(3)(a), more than 28 grams, less than 200, punished as a class G felon, sentenced to a minimum term of 35 and a maximum of 42, with a fine of $50,000 as a minimum maximum term of that statute. . . .

. . .

THE COURT: . . . Mr. Mee, you may object, sir, now.

DEFENDANT: Yes, I object to what he's talking about.

THE COURT: All right, sir. That's overruled. Let me ask you a question, sir. . . . I understand you object to the jurisdiction of the Court, but you are indicted under three separate indictments. One is trafficking and possession of less than -

DEFENDANT: Sir --

THE COURT: Let me just finish talking and then we'll - trafficking by possession of less than 28 but more than 200, which is a class G felony. Carries a minimum of 35 and a maximum of 50, and a mandatory minimum fine of $50,000. Your other two charges are possession with intent to sell and deliver marijuana greater than one and one half ounces, which is a class I felony with a maximum possible punishment of a minimum of 12 and a maximum of 24. And a third indictment of intentionally maintaining a dwelling for the keeping or selling of controlled substances, which is also a class I felony, with a minimum of 12 and a maximum of 24. And the reason I'm telling you this, Mr. Mee, is that if you would like to be represented by a court-appointed counsel to represent you in this matter --

DEFENDANT: I'm not going to --

THE COURT: - I will do that.

DEFENDANT: Okay. I understand what you're saying. But I'm saying I'm not going to accept these proceedings. I'm not going to be in this proceeding. I'm not going to take count in these proceedings.

. . .

THE COURT: But I just want to inform you that I would appoint counsel to represent you.

DEFENDANT: The only thing that I'm here for is personal jurisdiction, and the Court doesn't have it over me. . . . So as far as the charges or whatever you're talking about, I don't even know what you're talking about.

THE COURT: But you don't want me to give you an appointed attorney, you want to just object to the jurisdiction of the Court; is that correct?

DEFENDANT: Jurisdiction of the Court, and . . . . this fictitious corporation, which is North Carolina, bringing charges against me[.] . . .

. . .

THE COURT: What we're going to do, how we're going to proceed is that there are these charges that have been brought and we're going to --

DEFENDANT: By who?

THE COURT: By the State of North Carolina. . . . . And we're going to bring them to trial.

DEFENDANT: No, I object.

THE COURT: I understand, and that objection is overruled. But let me tell you this. We're going to have a trial --

DEFENDANT: No, sir.

THE COURT: - and we're going to bring a jury into the courtroom. And you –

DEFENDANT: You cannot proceed --

THE COURT: Sir, I'm talking now. So I'm warning you, I don't want to be interrupted. If you'll just let me finish, and I'll let you talk too.

DEFENDANT: Okay.

THE COURT: So what we're going to do is, in a bit we're going to call for people who have been called for jury service, and about 40 or 50 people are going to come into the room. Twelve of them are going to be placed randomly into the box. . . . And the District Attorney is going to have a chance to ask them some questions. And you're going to have a chance to ask them some questions.

DEFENDANT: No, I'm not. I'm not going to - I'm not going to be with these proceedings, Your Honor. If you're telling me you're going to do what you're going to do, you're going to violate my United States, United Nation rights. The best thing you can do right now is send me back to jail. All I'm going to do is object to any time you ask me something. . . . I will not participate in this contract in any kind of way. . . .

THE COURT: Mr. Mee, I want you to understand, yes, you're correct --

DEFENDANT: I'm not understanding anything you're talking about.

THE COURT: Sir, please don't interrupt me, one human being to another. . . . What we're going to do is, we're going to bring a jury in here. And you're right, we are going to proceed . . . whether you like it or not.

DEFENDANT: That's fine. . . . I won't be a part of the proceedings, is what I'm saying.

THE COURT: That's fine. Let me just explain to you what's going to happen, because you

have a right to know it. So we're going to bring 40, 50 people into this room. Twelve of them are going to be put in the box. The District Attorney is going to have a chance to ask them questions. You're going to have a chance to ask them some questions.

DEFENDANT: No, I'm not.

THE COURT: Then 12 people are going to be selected.

DEFENDANT: No, sir.

THE COURT: Then after that, Mr. Wilson here as the State is going to put his evidence on. And he's going to have a chance to ask some questions, and you're going to have a chance to ask some questions.

DEFENDANT: I will not.

THE COURT: That's fine. But you have a right to be here, is what I'm trying to tell you.

DEFENDANT: It's participating. I done told you I'm not going to participate.

THE COURT: So are you telling me you want to go back –

. . .

DEFENDANT: What I'm saying, anyway, you can sit there . . . Mr. Administrator. Because since 1789, there's been no Judges. You're just an administrator of the court anyway. That's all you are, with your yellow fringe. . . . My First Amendment right has been violated. My Eighth Amendment right and Fourteenth[.] . . .

. . .

THE COURT: Sir, you have a right to participate in this trial. And if you don't want to take it, you don't have to.

DEFENDANT: I've already told you. I will not participate in any of the fictitious contracts that the State of North Carolina are bringing. So if you're telling me you're going to send me back and proceed, then you do so. . . . I'm going to object. I'm going to object to everything that happens. So if you're saying for me to stay here is participating, take me back, because I'm not going to participate.

THE COURT: So you don't want to sit here during this trial.

DEFENDANT: I will not participate in any trial, anything, no, sir.

THE COURT: You will not exercise your right to sit here and have Mr. Williams help you.

DEFENDANT: I will not participate with anything with the fictitious State of North Carolina. . . . The trial is going to happen without me. . . .

THE COURT: Well, you have a right to sit here and listen to the evidence against you -

DEFENDANT: No.

THE COURT: - and consult with Mr. Williams. And I'm also - you also have the right to take court-appointed counsel, to have an attorney represent you, to see if a jury will find you not guilty.

DEFENDANT: I will not take a court-appointed attorney. An agent of the State. He's representing the State. He's with you, he's not with me. . . . I've told you I will not participate in anything dealing with the

Court trying to forcibly make me stand to trial. I'm not going to participate in it. . . . And if you're saying you're going to proceed without me, then that's what you need to do. But I won't participate in it. I won't consent to it. No, sir.

THE COURT: If you don't want to sit here in this trial, I'm going to try to get it hooked up so that you can at least see the proceedings.

DEFENDANT: No, no, I'm not going to participate in them at all. . . . I'm not going to take part in this, Your Honor. . . . I will not watch a video. . . . My sole purpose here is for jurisdiction. You're saying you overruled that[.] . . . The holder in due course has to press charges. Who is the holder in due course? UCC 3-308. All law is contract. . . . Therefore, the Uniform Commercial Code applies. . . . I'm not going to participate in this. I'm protected under international law of the United States Republic Peace Treatise of 1787[.]. . .

. . .

DEFENDANT: . . . I put on the record where I stand with the jurisdiction, that this Court lacks jurisdiction. I put on the record that I will not participate in these proceedings. . . .

THE COURT: So let me try to just give you a little information.

DEFENDANT: Okay.

THE COURT: So I understand what you're saying, that you're not going to participate. . . . I suppose it's your right really, not to participate. . . . But if you continue to say you won't participate, then I am going to proceed. . . . A jury is going

to rule on your guilt or innocence, based on the evidence that's presented. . . . And if you're not here, and there's no defense presented and you're not participating, the chances of the jury acquitting you are . . . kind of lessened. . . . And if you don't participate, one thing that Mr. Williams could do, is that Mr. Williams could ask questions on your behalf to try to -

DEFENDANT: No, sir.

. . .

THE COURT: And you don't want Mr. Williams to ask questions of the witnesses on your behalf?

DEFENDANT: There's nobody to talk to. There's nobody here. If you're going to proceed, then you do what you have to do, without my consent. You do what you have to do. But no, I don't have counsel. I don't want counsel.

. . .

THE COURT: And you don't want Mr. Williams to do anything on your behalf?

DEFENDANT: Nobody do nothing on my behalf. . . .

The trial court attempted unsuccessfully to obtain defendant's cooperation in remaining in the courtroom when the jury venire was brought in, to ascertain that defendant had no prior acquaintance with the any of the prospective jurors. Defendant refused to be seated or stay in the courtroom, despite being held in contempt three times. After defendant was taken to a holding cell, the trial court stated that:

THE COURT: The Court finds that Mr. Mee was removed from the courtroom because he was brought in for approximately an hour. The Court attempted to give him the right to proceed to trial, either *pro se* or with appointed counsel, or with standby counsel, and that Mr. Mee continually interrupted the Court and . . . the Prosecutor, and stated emphatically over and over . . . again that he would not participate in this trial. So the Court finds that his behavior is willfully disruptive, disrespectful of the Court, and the trial may proceed in his absence, since he has stated that he will not participate.

. . .

THE COURT: . . . [He] appeared to me to be competent too. And he certainly has filed a lot of paperwork in the file, which indicates that he is a very intelligent person. . . . [H]e's unequivocally stated over and over again that he won't participate and doesn't recognize the jurisdiction of the Court[.] . . . There's a number of things I'd like Mr. Williams to do at every break. And one is, is to inform Mr. Mee of his right to be present. . . . And I would like Mr. Williams to request Mr. Mee to allow him to make objections, address the Court, and cross examine witnesses on his behalf. . . .

At appropriate intervals during the trial, defendant's standby counsel spoke with defendant, informing him of his right to be present in court and asking if he had changed his mind about participating in the trial. Defendant consistently refused to participate, on one occasion asking standby counsel "to inform the Court that he's not going to participate, that he

does not know who the State of North Carolina is, and he does not understand the proceedings." In response, the trial court stated:

> THE COURT: . . . [T]he Court finds as a fact that Mr. Mee is intentionally disrupting these proceedings and intentionally trying to impede his trial. And that was apparent from his demeanor yesterday when I saw him. . . . [T]he Court notes from the court file that Mr. Mee had at least one court-appointed attorney that he fired. Then he retained Mr. Williams; he fired Mr. Williams. Then he came in front of Judge Abernathy and said he wanted to proceed *pro se*. He told Judge Abernathy [and] Judge Stephens . . . that he would not recognize this Court. . . . [H]e refused to participate yesterday and would not sit and would not recognize the Court's contempt powers. So despite Mr. Mee's protestations that he does not understand these proceedings, the Court is of the opinion that he understands these proceedings very well, and just is not recognizing the Court[.] . . . He's obstructing these proceedings.

To summarize the procedural background:

> 5 January 2012: Defendant was arrested.

> 6 January 2012: Defendant appeared in district court and signed a waiver of his right to appointed counsel.

> 6 June 2012: Defendant appeared in district court, refused to check any of the options on a waiver of counsel form, and signed the form as "Kenneth Mee Bey." Handwritten notes state that defendant refused to address the court regarding counsel, and that he had previously hired an attorney, Alton

Williams, who had been permitted to withdraw due to ethical concerns.

30 July 2012: Defendant appeared in superior court before Judge Stephens and refused to enter a plea or to clearly state his wishes regarding counsel, instead making statements regarding his legal status and demanding to see the court's oath of office so that he could file "a counterclaim." Judge Stephens entered a plea of not guilty, appointed the public defender to represent him, and revoked defendant's bond.

22 August 2012: Defendant appeared before Judge Stephens, represented by assistant public defender Stephanie Davis. He allowed Ms. Davis to request a bond reduction, but would not allow her to enter a plea on his behalf, and stated that he objected to the court's jurisdiction. Judge Stephens entered a plea of not guilty and denied defendant's request for a modification of bond.

25 October 2012: Mr. Williams filed a notice of representation. Ms. Davis's motion to withdraw was allowed.

29 October 2012: Mr. Williams represented defendant in superior court before Judge Paul Gessner, where he made a "general appearance" on defendant's behalf and told the court that defendant was "submitting himself" to the court's jurisdiction and would withdraw his *pro se* motions challenging the jurisdiction of the North Carolina courts. Mr. Williams asked for a bond reduction, assuring the court that defendant's objection to the court's jurisdiction was no longer an issue.

30 November 2012: Mr. Williams filed a motion for continuance, which was granted by Judge Howard Manning.

4 February 2013: Defendant appeared before Judge Abernathy. The prosecutor stated that defendant had resumed his challenge to the court's jurisdiction. When Mr. Williams said he was ready to proceed, defendant objected, insisting he was present only to challenge jurisdiction and that Mr. Williams was not his attorney. Defendant asserted that he was not subject to the court's jurisdiction, and the court denied his motions to dismiss for lack of jurisdiction. In response to the court's statements on any subject other than jurisdiction, defendant claimed that he did "not understand" what was said, without identifying the source of his confusion, and objected to the court speaking on any subject other than jurisdiction. He refused to sign a waiver of counsel or state his wishes regarding representation and informed the court that he would "never participate" in a trial. Judge Abernathy appointed Mr. Williams as standby counsel and found that defendant waived the right to counsel and was proceeding *pro se*.

25 March 2013: Defendant was in court for trial and engaged in an extensive colloquy with the trial court, during which he refused to state his wishes regarding counsel, alleged that he did "not understand" any subject other than jurisdiction, argued with the trial court, repeatedly insisted that he would not participate in the trial, and was held in contempt three times for refusing to sit down. Defendant left the courtroom and was not present during his trial.

In sum, defendant appeared before at least four different judges over a period of fourteen months, during which time he hired and then fired counsel twice, was briefly represented by an assistant public defender, refused to indicate his wishes

with respect to counsel, advanced unsupported legal theories concerning jurisdiction, and claimed not to understand anything that was said on a subject other than jurisdiction. When the case was called for trial, defendant refused to participate in the trial. "Such purposeful conduct and tactics to delay and frustrate the orderly processes of our trial courts simply cannot be condoned. Defendant, by his own conduct, forfeited his right to counsel and the trial court was not required to determine, pursuant to G.S. § 15A-1242, that defendant had knowingly, understandingly, and voluntarily waived such right before requiring him to proceed *pro se*." *Montgomery* at 525, 530 S.E.2d at 69 (citing *McFadden*).

Defendant acknowledges the extensive procedural history of this case and concedes that defendant was "disagreeable, suspicious, and obsessed with legally irrelevant matters." He argues, however, that defendant should not be held to have forfeited his right to counsel because he "did not threaten counsel or court personnel" and "was not abusive." Defendant contends that forfeiture requires evidence that he "asserted his position by means of serious misconduct that prevented the court from making a determination about whether he was competent and wanted to make a knowing and understanding waiver of his right to counsel." Defendant thus posits that, unless a defendant is

physically abusive or prevents the court from informing him of his right to counsel, the defendant's behavior cannot support a finding that he forfeited the right to counsel.[2] Defendant cites no authority for this position, and we know of none. "Any willful actions on the part of the defendant that result in the absence of defense counsel constitutes a forfeiture of the right to counsel." *State v. Quick*, 179 N.C. App. 647, 649-50, 634 S.E.2d 915, 917 (2006) (citing *Montgomery* at 524, 530 S.E.2d at 69). Moreover, defendant was held in contempt three times by the trial court, which indicates that his behavior was somewhat disruptive.

We also note that in *State v. Leyshon*, 211 N.C. App. 511, 710 S.E.2d 282, *appeal dismissed*, 365 N.C. 338, 717 S.E.2d 566 (2011), we held in a similar factual context that the defendant had forfeited his right to counsel. In *Leyshon*, as in the present case, the defendant "refused to answer whether he waived or asserted his right to counsel," "made contradictory statements about his right to counsel," and contended that he was not subject to the court's jurisdiction. *Leyshon*, 211 N.C.

---

[2] Defendant also makes generalized references to the possibility that he "asserted his position because of ignorance, [or] some form of limited mental capacity or [mental] illness[.]" However, defendant does not identify any evidence that raises an issue concerning defendant's competence, and we discern none.

App. at 517, 710 S.E.2d at 287. We held that he had forfeited the right to counsel:

> [The defendant] obstructed and delayed the trial proceedings. The record shows that Defendant refused to sign the waiver of counsel form filed on 19 July 2007 after a hearing before the trial court. At the 7 January 2008 hearing, the court . . . repeatedly asked if Defendant wanted an attorney. Defendant refused to answer, arguing instead, "I want to find out if the Court has jurisdiction before I waive anything." . . . Likewise, at the 14 July 2008 hearing, Defendant would not respond to the court's inquiry regarding whether he wanted an attorney. . . . At the next hearing on 13 July 2009, Defendant continued to challenge the court's jurisdiction and still would not answer the court's inquiry regarding whether he wanted an attorney or would represent himself. . . . Based on the evidence in the record, we conclude Defendant willfully obstructed and delayed the trial court proceedings by continually refusing to state whether he wanted an attorney or would represent himself when directly asked by the trial court at four different hearings. Accordingly, Defendant forfeited his right to counsel[.]

*Leyshon* at 518-19, 710 S.E.2d at 288-89. Based on *Leyshon* and similar cases, we hold that defendant engaged in "purposeful conduct and tactics to delay and frustrate the orderly processes of our trial courts" that resulted in a forfeiture of his right to counsel. *Montgomery, id.* "Because forfeiture does not require a knowing and voluntary waiver of the right to counsel, the inquiry pursuant to section 15A-1242 is not required in such

cases." *State v. Boyd*, 200 N.C. App. 97, 102, 682 S.E.2d 463, 467 (2009) (citing *Montgomery*), *disc. review denied*, __ N.C. __, 691 S.E.2d 414 (2010). Accordingly, we need not address defendant's argument that the trial court failed to conduct the inquiry required under N.C. Gen. Stat. § 15A-1242.

We conclude that the defendant had a fair trial, free of error.

NO ERROR.

Judges McGEE and ERVIN concur.