# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KENNETH HAROLD BEVERLY,

Defendant-Appellant.

UNPUBLISHED
November 13, 2018

No. 339308
Oakland Circuit Court
LC No. 2016-260045-FH

Before: MURRAY, C.J., and METER and GLEICHER, JJ.

PER CURIAM.

Defendant proceeded to trial representing himself after four attorneys withdrew. He contends that the circuit court violated his right to counsel by allowing his fourth attorney (whom defendant had retained) to withdraw on the day of his adjourned trial, "forcing" involuntary self-representation. Defendant is not entitled to relief as he was given more than adequate warning that self-representation was the consequence he would face if he refused to work with his fourth lawyer. We affirm.

## I. BACKGROUND

A jury convicted defendant of larceny of sporting goods valued between $1,000 and $20,000. Video surveillance captured images of defendant stealing four boxes of merchandise outside a store and driving away in a white Ford truck, which was later found parked outside his home. Defendant advertised the stolen items for sale on eBay (using his real name and contact information) and arrived at a controlled buy with a selection of the stolen goods. Defendant sold other items to a used sporting goods store. Execution of a search warrant led to the discovery of the remaining items, which were found inside defendant's home. Defendant also had a prior record of theft and fraud crimes, making him a fourth habitual offender.

On the day scheduled for his preliminary examination, defendant met with his appointed attorney, Max Manoogian, in the district court building. Manoogian had secured a copy of the police report and images taken from the store surveillance footage. Defendant was upset, however, that counsel had not engaged in discovery. Defendant and Manoogian both cited a breakdown in the attorney-client relationship and moved for Manoogian's withdrawal. District Court Judge Kimberly Small allowed the withdrawal, agreed to appoint new counsel to represent defendant, and adjourned the preliminary examination to allow new counsel time to prepare.

-1-

Judge Small advised defendant that there were no other documents or evidence to secure through discovery. She also warned defendant:

"[W]hoever they appoint is who's going to be representing you."

"[Y]ou certainly have a right to an attorney, but you don't have a right to an attorney of your choice. You have a right to a competent attorney."

"I just allowed a very competent attorney to withdraw on your behalf. So the next attorney is the attorney that's going to be representing you."

Defendant indicated that he understood.

Defendant appeared with his second appointed attorney, Lawrence Kaluzny, at the preliminary examination, circuit court arraignment, and first pretrial scheduling hearing. Kaluzny stated at the hearing that he had secured transcripts from all prior proceedings and was "looking at potential motions." The prosecution had provided additional discovery. Trial was scheduled for four months later as Kaluzny would be out of town for approximately seven weeks.

In the meantime, defendant conducted his own discovery by filing a Freedom of Information Act request for the prosecutor's file. At a February 14, 2017 pretrial hearing, Kaluzny advised Circuit Court Judge Leo Bowman that there had been a breakdown in the attorney-client relationship and Kaluzny and defendant were "not able to talk." Kaluzny continued:

He's very upset with some things he feels I should be doing. I've given him copies of everything I have. There's accusations that things have been changed.[1] I said I don't believe that, I'm not filing motions in that regard. And he's upset about that, and he wants another attorney.

Normally, you know me, normally I don't withdraw from cases. But I do believe there's a breakdown in the relationship at this point.

Defendant agreed that he wanted Kaluzny to withdraw. Defendant indicated that he "would like to" retain his own attorney but asked for replacement appointed counsel. The court advised defendant, "You don't get to choose who the lawyer is that's appointed to represent you." Defendant indicated that he understood. The court continued:

Mr. Kaluzny is actually one of the best lawyers that I know that practices in this court, period. And so, any assessment that you've made that you don't believe he is representing you appropriately, you have to understand from my vantage point that I find it to be without merit.

---

[1] Defendant believed an audio recording of his police questioning had been tampered with.

Now, unless you're going to be hiring your own lawyer, I will not have you here trying to indicate to the Court who's going to represent you. You need to understand that.

Defendant insisted that he was not attempting to "pick" his appointed lawyer or that he was disparaging Kaluzny's abilities. Rather, defendant claimed that there had been a breakdown in the relationship because "[t]here is some information in my case regarding motions that need to be file[d]. He states that he doesn't want to file any motions in my case, and I believe that my case needs motions to be filed." He claimed:

There's information that's been changed that was in his custody that audio tapes that I currently have some expert witnesses. I need to get a chain of custody and other information from the district court and the police regarding this incident - -

Judge Bowman was astounded that defendant wanted an expert witness in a simple larceny case. However, the court allowed Kaluzny to withdraw based on the attorney's statements that "he doesn't believe that he can appropriately represent you going forward because of a breakdown," and not based on any of defendant's comments. "If he indicated to me that, nevertheless, he was satisfied he could represent you, he'd be your lawyer, or you'd represent yourself." Judge Bowman noted that trial was scheduled for March 20, with a pretrial hearing scheduled for March 7. Judge Bowman agreed to appoint substitute counsel for defendant "by the noon break."

The court appointed Richard Taylor to represent defendant, but he never appeared in court. Instead, defendant filed an in pro per motion to adjourn the trial date on March 2 and then retained Rebecca Tieppo, who appeared at the March 7 pretrial hearing. Tieppo requested an adjournment of the trial date as she "was just recently retained" and as her predecessor counsel "was out of town for several months" and was "not able to prepare at all for this case." She described Kaluzny's absence as "lost time" during which "there was nothing done on [the] case." The court denied the adjournment and advised Tieppo to be ready for trial.

On March 10, defendant filed an in pro per motion for discovery, stating that "he ha[d] no attorney as of March 7, 2017." In his motion, defendant explained his concern that the police were relying on photographs taken with a police cell phone of the surveillance footage. Defendant also believed an audio recording made by the police had been tampered with. In the original recording, defendant claimed that he denied that he was the individual in the picture and said "it looks like my truck or words to that effect." In response to his FOIA request, defendant received a recording with his first statement omitted. Defendant asserted that he had hired an unidentified expert to examine the recording and requested information about the chain of custody.

On March 13, Tieppo filed an emergency motion to withdraw. Tieppo described that following the March 7 hearing, defendant "became irate over the Court's" ruling and "became extremely loud and verbally abusive towards" her "in the hallway just outside of the courtroom." Defendant followed up later that day with text messages indicating that he no longer wanted Tieppo to represent him. Over the next three days, defendant "sent approximately 32 text

messages and made numerous phone calls to Attorney Tieppo, harassing her, requesting a return of legal fees paid, and insisting to meet immediately for the return of documents in his case." Tieppo described defendant as "conduct[ing] himself in an irate, hostile fashion, and even threaten[ing] to visit Attorney Tieppo's place of business or her home to protest against her publically [sic]." As result of this harassment, Tieppo "fear[ed] for the safety of herself and her family." Based on the breakdown in the attorney-client relationship and because defendant had fired her, Tieppo stated she could not represent defendant at the March 20 trial.

Despite her emergency motion to withdraw, Tieppo filed several motions on defendant's behalf on March 15. She filed motions to suppress still photos taken from the video surveillance footage because the original video had not been preserved, and to suppress the fruits of the residence search, challenging the adequacy of the search warrant and supporting affidavit. She filed a motion to quash the bindover or dismiss the charges, challenging the sufficiency of the evidence presented at the preliminary examination. Tieppo also filed a motion to quash the fourth habitual enhanced sentence notice, citing the prosecutor's failure to timely provide this notice to defendant and the court, and to quash the "swear-too [sic], information and prosecutor order no. 16-36844."

The court declined to consider the withdrawal motion on an emergency basis and Tieppo appeared in court with defendant on March 20. Tieppo renewed her motion to withdraw, claiming that she had attempted to speak with defendant several times. She asked "if he wanted to plead, if he wanted [Tieppo] to represent him." But defendant "did not tell" Tieppo and she "ha[d] no idea what his intentions are." Their communications had "been very hostile" and Tieppo asserted, "I cannot zealously represent him. There's been a huge breakdown in the attorney-client relationship. . . . He said at some point that he thought he might get another attorney." Tieppo claimed that she did not immediately file a motion to withdraw on March 7 because she thought defendant would calm down and she could continue to represent him.

Judge Bowman then addressed defendant, who indicated that he had "no objection" to Tieppo withdrawing. Accordingly, the court granted the motion. The following colloquy ensued:

> *The Court.* [Defendant], do you intend to represent yourself?
>
> *Defendant.* Your Honor, I would like to have an attorney. . . .
>
> *The Court.* Did you hire an attorney and bring an attorney here this morning?
>
> *Defendant.* No, I didn't, but I'm in the process - -
>
> *The Court.* You understood that this attorney was moving the Court to withdraw from your case; you knew that right?
>
> *Defendant.* Yes, I did. Yes, Your Honor.
>
> *The Court.* And you didn't come here this morning with a replacement lawyer, did you?

*Defendant.* I've been stressed out, Your Honor.

*The Court.* I didn't ask you that. You didn't come here this morning with a lawyer to represent you in her place instead, did you?

*Defendant.* No, Your Honor.

*The Court.* Now, for the record, I want to make this very clear. I think this is an effort by you to delay this trial. I think it's no more, no less. And here's what is going to happen. I'm letting this attorney withdraw. I'm continuing this trial over for three weeks. I'm going to set it for a pretrial, final conference in one week, and give you an opportunity to get a new lawyer.

*What you need to understand is, [defendant], the next date that this is set for trial, you're going to have the trial that you've demanded.* You have a right to have a trial. You demanded one. And the trial is to be timely. This will be the third lawyer [actually fourth] that has been in this case, both [actually three] lawyers withdrawing. *This Court is not going to permit you to play games, and you need to appreciate that.*

\* \* \*

[Defendant], do you understand what I've just said?

*Defendant.* Yes, Your Honor.

*The Court.* Now, I'm going to take a precautionary measure, and I'm going to appoint another lawyer to have here on [March 27]. In the event that you don't hire a lawyer, the Court is going to have a lawyer here. You hire a lawyer, the lawyer that you hire will represent you. *You don't have a lawyer that you hire, then you have a choice; you either go to trial and represent yourself, or you may accept the services of a lawyer appointed by the Court.* Do you understand that?

*Defendant.* Yes, Your Honor.

*The Court.* Counsel, I'm appointing Jack Holmes in this case. Any discovery material that you have, for the moment, you turn over to [defendant].

\* \* \*

*The Court.* Okay. Now, if you're going to hire a lawyer, [defendant], it's very important that you hire your attorney, and you get that material to your lawyer. Do you understand that?

*Defendant.* Yes, Your Honor.

*The Court.* In the event that you don't hire a lawyer, you are given notice that you are to be here on March 27th at 8:30 a.m. Do you understand that?

*Defendant.* Yes, Your Honor.

*The Court.* Okay. This delay is attributable to the defendant. [Emphasis added.]

On March 27, defendant appeared with retained counsel, Vassal Johnson. Johnson indicated that defendant had "hired some forensic experts to possibly examine a recording device that was used as part of the discovery in this matter." Counsel requested additional time to allow the experts to conduct their investigation. The court interrupted and indicated that trial would occur on April 17. The court then called appointed counsel Holmes to the bench and stated:

The Court had directed Mr. Holmes be in here in the event that this defendant showed up this morning without retained counsel. I gave him fair notice that a lawyer would be appointed at public expense. This case has been adjourned. There are two occasions where two [actually three] previous lawyers were on the case, both [actually three] of them moved the Court to withdraw. The case has been set for trial . . . since . . . November 1, 2016[.]

* * *

. . . And counsel, first [actually second] attorney, withdrew February 14th, 2017. He retained new counsel. And even at that point the Court was prepared to appoint counsel at public expense. He indicates, no, he's going to hire new counsel. In fact, he hired new counsel. And then new counsel comes in, wants to adjourn the trial, which I made clear was not going to be adjourned.

Then counsel filed a motion to withdraw indicating a breakdown and that she could no longer represent him. That motion was before the Court on March 20th, 2017, with this trial still pending. Because of the breakdown and because the lawyer said she could not represent him, I allowed the withdrawal, made very clear that this trial date was continuing. . . .

* * *

I made note that I believed in my assessment is [sic] there was a deliberate attempt to undermine the trial date, and that I had no intention of adjourning the trial. I indicated that to counsel previously, I indicated it to the defendant previously, and ordered that this pretrial would continue. And in the event he did not have retained counsel, that counsel would be appointed, and this case was going to trial. And so, he retained you, you came in appreciating that the case was scheduled for trial.

* * *

The trial date is going to go forward. This notion of an expert, you've had two [actually three] attorneys. The case goes to trial . . . .

On March 31, Johnson renewed several motions on defendant's behalf. He moved to quash the information and dismiss the charges against defendant based on the lack of probable cause established at the preliminary examination, to suppress the still photos taken from the video surveillance and any video recordings of the surveillance footage that the detectives may have taken with their phones for failure to present all the evidence to defendant and because the original footage had been destroyed, and for additional discovery regarding defendant's recorded statement. The court considered and denied these motions on April 12.

The day before trial, defendant sent a letter to the court complaining about and requesting to terminate his retained counsel. He accused Johnson of breaking his promise to file a motion to suppress the evidence uncovered as a result of an invalid search warrant. Defendant alleged that Johnson promised to secure information to show the chain of custody of the audio recording but had not done so. Defendant again claimed that he had hired an unnamed expert to review this evidence. Johnson forwarded defendant a page from the police report which described the detective's handling of the information, but defendant asserted this was not adequate to establish the chain of custody. Ultimately, defendant accused Johnson of "deceiving me up until the last moment before this trial as he has not provided me with the chain(s) of custody" and "seems to [sic] deceiving me, which has now placed me in worst [sic] position than before I hired him." Finally, defendant asserted that he requested a meeting with his attorney on April 13 to "prepare a defense for my trial" but that Johnson told him, "There [sic] going to find you guilty, there's no need for to [sic] prepare." Moreover, defendant claimed that Johnson "ha[d] not offered to help prepare me for trial and has not asked me about witnesses or evidence that is obtainable needed [sic] for my trial."

On the first day of trial, Johnson informed the court that defendant "want[ed] another attorney as . . . there's been a breakdown of the attorney/client relationship." Accordingly, Johnson did not feel he could effectively represent defendant. The court interjected:

Let me make . . . [the] record clear. This case is going to trial this morning. You are the fourth lawyer in this case. When you came into this case, I made the record and indicated in explicit detail the previous lawyers that had been in this case. And at least one of them on the eve of trial, the same scenario, and I let the lawyer out indicating to the Defendant that he had a choice to take a court-appointed lawyer, or he could hire his own lawyer. He exercised his right, and he hired you.

You come into this case, a case that was trial ready and you file I think it no less than three to four motions that were all outside of the scheduling order, and I allowed them to be heard even though they were clearly outside the scheduling order. . . .

-7-

* * *

Now today is the day for trial.  I've noted on the record previously this Defendant's gamesmanship with lawyers on the eve of trial because in other instances, at least the inference was that the lawyers were attempting to exercise their judgment as attorneys, and this Defendant wanting to direct lawyers to do other than what they appreciated was appropriate to do.  And then they'd decline, and he'd abruptly want a new lawyer.

Well, this is the trial date.  I do not intend to have the Defendant play any further games with this Court.  Here are his choices.  If he doesn't have another lawyer here that he is prepared to go forth with, he may represent himself.  I don't intend to appoint a lawyer.  The last occasion when I had a lawyer here ready to proceed, that's when he came into court with you counsel, and I released the other lawyer.  I had no reason to believe after hearing four motions that there was any issues with you and your client.

And so again, there are no lawyers here.  *If you don't try this case, he goes to trial without counsel.  He can represent himself.  I don't intend to allow him to play any further games with this Court.*  [Emphasis added.]

The court confirmed that defendant personally drafted the letter requesting removal of Johnson from the case.  The court then asked:

*The Court*.  What's your name, sir?

*Defendant*.  My name is Kenneth Harold Beverly.

*The Court*.  You don't want this attorney to represent you?

*Defendant*.  No, your Honor, for the reasons I got stated - -

*The Court*.  Okay.

*Defendant*.  - - in this letter.

*The Court*.  You're off the case.

*Mr. Johnson*.  Thank you, Judge.

*The Court*.  I pass it.  We're going to trial.  That's it.

The court attempted to segue into jury selection, but defendant wanted to place his letter to the court on the record.  The court interrupted and warned:

I want you to understand this.  In going forward you are to guide yourself by this instruction.  When I ask a question, we're gonna address the question that I asked.  If I don't ask you a question, and you want to say something, you request

the court's permission to speak. Those are the rules. I intend to hold you to them. You step outside of those rules, you subject yourself to contempt.

The court then allowed defendant 10 minutes to review the jury instructions. After defendant reviewed the instructions, he expressed confusion over the impeachment of defendants with evidence of their prior convictions, noting "I don't know the law, and I'm not an attorney. I never asked to represent myself. . . ." Defendant's question led to the removal of the instruction, but did not trigger additional discussion of defendant's representation.

When the court finished addressing jury instructions, defendant requested to revisit the issue of his representation. He explained:

> And I understand you being the way you are with me, I understand that. But people see things differently when they in this [sic] different shoes. But I just want to put this part of [sic] the record. And I tried to find an attorney this past weekend, but it was Easter weekend. So . . . I'll do what I have to do.

The court reminded defendant that he had had four attorneys and that he had problems with them all. Accordingly, he asked defendant to clarify which attorney he was speaking of when he complained about his attorney. Defendant stated, "I just paid him three weeks ago, I paid him $5,000.00. . . . This is not something that I wanted to do."

The court moved on and gave defendant detailed instructions about conducting voir dire. Before the jury venire entered the courtroom, defendant asserted that he was "being forced to represent himself" and asked permission to make some phone calls ahead of the proceeding. The court denied this request. Judge Bowman then advised defendant, "I am attempting to get a lawyer that'll come here and act as standby counsel. . . ." Defendant was left to begin voir dire alone.

The court advised the jury venire that defendant had exercised his right to represent himself. The court instructed defendant to introduce himself to the venire and defendant used this opportunity to state, "I'm being forced to represent myself today." When defendant was later permitted to question the venire directly, he reiterated, "I'm being forced to represent myself. . . ." But defendant did pose questions to some of the potential jurors.

After lunch, the court indicated that John Angott would serve as standby counsel and would arrive at 1:30. The court recessed until that time. Upon the resumption of the proceeding, the court instructed defendant that he could consult with Angott at any time during the trial. The court also warned defendant to discontinue his commentary to the jury. The court had already advised the jury venire that defendant was representing himself and that this could not be used against him. The court then advised defendant that he still had the right to retain new counsel at any point he wished during the trial. And defendant did consult with Angott before determining whether to challenge the placement of potential jurors on the panel. With the assistance of standby counsel, defendant used all his peremptory challenges.

Defendant went on to give a brief opening statement on his behalf. He objected to the prosecutor's questions during direct examination of state's witnesses, sometimes successfully, and cross-examined the witnesses as well. Defendant even raised detailed evidentiary objections

-9-

during the trial. After reigniting his complaints that the prosecution had not disclosed all the evidence against him,[2] however, the court excused the jury and warned, "I'm satisfied that this is not accidental that you are doing this. And I'm giving you an instruction not to make these unfounded, extraordinary statements before the jury."

Ultimately, the jurors rejected defendant's claims of mistaken identity based on altered evidence. They deliberated for only an hour before they found him guilty. Even as a fourth habitual offender, defendant's minimum sentencing guidelines range started at only nine months. The court decided to release defendant on bond until sentencing given this low range and defendant's prior military service, even though Judge Bowman believed, "what has gone on for the last nine months was a systematic attempt to evade going to trial."

Defendant appeared at sentencing without replacement retained counsel and accepting Angott as his standby counsel. At the conclusion of the hearing, the court sentenced defendant to two years of probation and 270 days in jail, with the jail time held in abeyance pending his performance on probation.

## II. ANALYSIS

Defendant raises a single challenge on appeal—that he was denied his right to counsel at trial and sentencing.[3] A criminal defendant who faces incarceration has a constitutional right to counsel at all critical stages of the criminal process. *People v Williams*, 470 Mich 634, 640-641; 683 NW2d 597 (2004). Upon a criminal defendant's request to proceed pro se, the trial court must determine whether the request is unequivocal, whether the defendant is knowingly, intelligently, and voluntarily waiving the right to legal counsel, and whether the defendant's self-representation will disrupt, unduly inconvenience, or otherwise burden the court and the administration of justice. *People v Anderson*, 398 Mich 361, 367-368; 247 NW2d 857 (1976). In addition, the trial court must comply with MCR 6.005(D), which provides:

The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first

(1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation.

(2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

---

[2] The court proved defendant's claims to be unfounded. He and the prosecutor guided defendant through this discovery packet, revealing all the documents and photographs that defendant insisted had not been produced.

[3] The prosecution contends that defendant abandoned his appellate challenge by failing to order the transcripts of all pertinent pretrial proceedings. The error was remedied, however, and this Court had access to all materials necessary to consider this appeal.

"[I]f the trial court fails to substantially comply with the requirements in *Anderson* and the court rule, then defendant has not effectively waived his Sixth Amendment right to the assistance of counsel." *People v Russell*, 471 Mich 182, 191-192; 684 NW2d 745 (2004). "Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures." *Russell*, 471 Mich at 191 (cleaned up).[4] "Proper compliance with the waiver of counsel procedures is a necessary antecedent to a judicial grant of the right to proceed in propria persona. Proper compliance requires that the court engage, on the record, in a methodical assessment of the wisdom of self-representation by the defendant." *People v Hicks*, 259 Mich App 518, 523; 675 NW2d 599 (2003) (cleaned up).

Here, defendant did not request to represent himself. Rather, the court warned him that if he terminated the services of his fourth lawyer, the court would consider the act as a request to represent himself. In *People v Kammeraad*, 307 Mich App 98, 130; 858 NW2d 490 (2014) (cleaned up), this Court noted, "the right to assistance of counsel, cherished and fundamental though it may be, may not be put to service as a means of delaying or trifling with the court." *Kammeraad* recognized that a criminal defendant can either waive or forfeit his right to counsel. *Id*. A defendant may forfeit his right to counsel through "purposeful tactics and conduct that were employed to delay and frustrate the orderly process of the lower court's proceedings." *Id*. at 131, citing *State v Mee*, 756 SE2d 103, 114 (NC App, 2014). Stated differently, "willful conduct by a defendant that results in the absence of defense counsel constitutes a forfeiture of the right to counsel." *Kammeraad*, 307 Mich App at 131. Forfeiture is distinguishable from waiver. When a defendant forfeits the right to counsel, the court is not required to determine whether the defendant knowingly, understandingly, and voluntarily gave up his right. *Id*.

In *Kammeraad*, 307 Mich App at 131-132, the defendant forfeited his right to counsel by "refus[ing] to accept, recognize, or communicate with appointed counsel, . . . refus[ing] . . . self-representation, and . . . refus[ing] to otherwise participate in the proceedings." In fact, the defendant refused to get dressed and walk into the courtroom, requiring court officers to place him in a wheelchair, cover him up, and haul him in. *Id*. at 112. A forfeiture can be found on less outlandish conduct, however. A defendant might forfeit his right to counsel by refusing to accept appointed counsel while also failing " 'to retain counsel within a reasonable time,' " or by acting " 'abusive toward' " his retained or appointed counsel. *Id*. at 132, quoting *United States v McLeod*, 53 F3d 322, 325 (CA 11, 1995).

This Court also recognized "the hybrid situation of 'waiver by conduct,' " also known as " 'forfeiture with knowledge,' " "which combines elements of forfeiture and waiver." *Kammeraad*, 307 Mich App at 133-134, quoting *United States v Goldberg*, 67 F3d 1092, 1101

---

[4] This opinion uses the new parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).

(CA 3, 1995). Waiver by conduct/forfeiture with knowledge occurs when "a defendant is warned that he or she will lose counsel if the defendant engages in dilatory tactics, with any misconduct thereafter being treated as an implied request for self-representation." *Kammeraad*, 307 Mich App at 133.

The court in this case did not engage in any inquiry to determine whether defendant was knowingly, understandingly, and voluntarily waiving his right to counsel. But the court did not need to as it determined that defendant had given up his right to counsel through his conduct. This was a matter of forfeiture, not waiver. The court also did not comply with MCR 6.005(D)(1). It would have been better practice for the court to advise defendant of the charge against him, the sentencing consequences he faced, and the various risks of representing himself before allowing Johnson to withdraw. This failure is not outcome determinative, however, given defendant's conduct.

Defendant tried to game the trial system. Right from the beginning, defendant made his attorneys' jobs an uphill battle and tasked them with insurmountable goals. Defendant sought Manoogian's withdrawal because he had not secured voluminous discovery before the ink was dry on the complaint. Even at this early stage in the proceedings, the district court advised defendant that he did not have the right to counsel of his choice. Thus ended the representation of defendant's first attorney.

The court granted sufficient time for Kaluzny to prepare for defendant's trial even with his seven-week absence. Defendant took the reins without his counsel's notice and secured discovery through a FOIA request. Despite that a complete audio recording of his police questioning had already been produced and was of record, defendant fixated on the fact that the copy of the recording offered up in response to the FOIA request was cut off. Defendant refused to accept that this was a copying error, not evidence tampering. Kaluzny's refusal to file an unfounded motion angered defendant such that he sought Kaluzny's withdrawal as well. The circuit court reiterated to defendant that the right to appointed counsel is not the right to counsel of one's choosing.

Defendant then sought out and retained his own counsel. He expected Tieppo to have the trial adjourned so he could prove that the police had tampered with the audio recording of his statement. Defendant added a new evidentiary complaint as well—that the officer's cell phone still photographs of the video surveillance footage, which clearly depicted defendant taking the subject boxes and placing them in the bed of his truck, were not properly authenticated and therefore should be excluded from evidence. However, the court had already warned defendant that he was on thin ice. Accordingly, it was not surprising that the court rejected defendant's motion, made through Tieppo, to adjourn the trial. Even so, defendant flew into a fury, verbally assaulting his attorney in the courtroom hallway and continuing with harassment and threats via text message. Tieppo was forced to file an emergency motion to withdraw. Defendant thereby secured the loss of his third attorney by his own abusive conduct.

The trial court allowed Tieppo to withdraw on the day scheduled for trial. The court gave defendant one last chance to find counsel and make the attorney-client relationship work. The court expressly warned defendant that trial would begin on the rescheduled date, whether or not defendant had counsel. The court tried to appoint new counsel for defendant, but he secured a

new attorney at his own expense. Should defendant appear for trial without this newly retained counsel, the court warned defendant that he would represent himself.

Defendant then hired Johnson, who filed several belated motions on defendant's behalf. The complaints raised in these motions had all been previously addressed by the court, or by defendant's prior attorneys. All lacked merit; there simply was no evidentiary shortfall warranting dismissal of the charges against defendant, or proof that the police had interfered with the evidence to frame an innocent man. When Johnson could not convince the court of defendant's conspiracy theories, defendant forced his withdrawal as well. Defendant lost his fourth and final attorney. Just as the court warned, it treated defendant's dismissal of his retained counsel as a request to represent himself.

The trial court was left with no choice but to find that defendant had forfeited his right to counsel with adequate warning and by his own conduct. The court advised defendant that he could retain replacement counsel at any time during the trial and continue the proceedings with representation. And the court appointed standby counsel to assist defendant during trial. Accordingly, the court did not violate defendant's constitutional right to counsel at trial.

We affirm.


/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher