STATE OF NORTH CAROLINA v. WAYNE HAYWOOD BROOKS

No. 8029SC67

(Filed 7 October 1980)

1. **Constitutional Law § 45– defendant appearing pro se – refusal to appoint standby counsel**

    The trial court did not err in allowing the indigent defendant to represent himself and in refusing to appoint standby counsel for him, since defendant knowingly and intelligently waived his right to appointed counsel; his motion to represent himself was granted only after defendant had been informed of the nature of the charges against him and of his right to appointed counsel; and defendant had no right to standby counsel, and the court did not abuse its discretion in denying such counsel where defendant requested it, the motion was granted, defendant changed his mind and elected not to use standby counsel, defendant later requested such counsel again, and the court refused. Furthermore, defendant could not complain that his imperfect understanding of the rules of evidence resulted in his failure to get certain evidence in the record, since the evidence he wished to get in was either irrelevant and immaterial or repetitive, and, having chosen to represent himself, he could not complain of the quality of his own defense.

2. **Criminal Law § 161– defendant representing self – necessity for exceptions**

    Failure of defendant, who represented himself, to note exceptions to rulings of the trial court constituted waiver of the right to assert the alleged errors on appeal. G.S. 15A-1446(b).

3. **Criminal Law § 128– motion for appropriate relief – failure to rule on as denial**

    There was no merit to defendant's contention that the trial judge erred in failing to rule upon his motion for appropriate relief, since defendant did receive a ruling on his motion under G.S. 15A-1448(a)(4) which provides that, if no ruling has been made by the trial judge on a motion for appropriate relief within 10 days, the motion is deemed denied.

State v. Brooks

4. **Criminal Law § 169– failure of record to show excluded testimony**

Defendant failed to show prejudice in the exclusion of certain testimony where the record did not show what the witness would have testified.

5. **Criminal Law § 106.5– uncorroborated testimony of accomplice – sufficiency of evidence**

The uncorroborated testimony of an accomplice is sufficient to sustain a conviction.

6. **Criminal Law § 87.3– reading from police records – no prejudice**

There was no merit to defendant's assignment of error to the trial court's allowing a police dispatcher to read from the official police records concerning the sounding of a burglar alarm in a grocery store, since defendant did not dispute the fact that the store was broken into on the night in question; the testimony was not inconsistent with defendant's defense; and defendant failed even to cross-examine the witness regarding this testimony.

7. **Criminal Law § 67– voice identification of defendant – independent origin**

The trial court in an armed robbery case did not err in determining that the victim's voice identification of defendant was of independent origin and was admissible; moreover, any lack of certainty in the victim's testimony that defendant's voice was "very familiar to" that of the robber went to the credibility of the testimony and not to its admissibility.

8. **Constitutional Law § 50– Speedy Trial Act inapplicable – delay in retrial for defendant's benefit**

There was no merit to defendant's contention that the six month delay between issuance of the mandate from the Court of Appeals to retry defendant and the actual retrial was in excess of the 120 day limit imposed on the courts by the Speedy Trial Act, since that Act did not take effect until 1 October 1978 and therefore was not applicable to defendant's case; moreover, his Sixth Amendment right to a speedy trial was not violated, since the delay was for the purpose of allowing defendant to locate his alibi witness, and since defendant made no showing of prejudice by the delay in his retrial.

APPEAL by defendant from *Ferrell, Judge.* Judgment entered 23 May 1979 in Superior Court, RUTHERFORD County. Heard in the Court of Appeals in Waynesville on 26 August 1980.

Defendant was charged in separate bills of indictment with armed robbery and with breaking and entering and larceny. He was convicted on all counts in a trial held in 1978, won a new trial in an appeal before this Court reported at 38 N.C. App. 445, 248 S.E. 2d 369 (1978), and was again convicted on retrial. He appeals from a consolidated judgment imposing a sentence of not less than nor more than thirty years, to begin at the expiration of sentences he is now serving for other offenses.

STATE'S EVIDENCE

The State's evidence tended to show that on 31 January 1977, Dean Burgess, owner and operator of Dean's Grocery in Spindale, closed his store about 8:00 p.m. and drove to his home several blocks away. At approximately 10:30 p.m. Burgess received a call from the police advising him that the burglar alarm in his store had been activated. Burgess drove to his store and entered through the front door, at which time a voice said, "God damn you, if you move I'll kill you." A large man wearing goggles and something covering his nose and mouth stuck a gun against Burgess's chest and forced him to lie down on the floor in the back of the store. For several minutes Burgess heard his assailant and another man talking. While Burgess was lying on the floor, the larger man, later identified as Marlon Edwards, took a billfold containing $1,200 from Burgess's pants pocket. Thereafter, the second person walked over to Edwards and told him to shoot Burgess and "let's get out of here." Edwards fired a shot which hit the floor next to Burgess's head, and then the two men fled.

Burgess never saw the face of either man. However, Burgess later identified Edwards by hearing and recognizing his voice and observing his build. After *voir dire* hearing in which the trial judge made findings of fact and conclusions of law, Burgess was allowed to testify that he could identify the defendant's voice as being "very much familiar to" the voice of Edwards' accomplice.

The State also presented the testimony of Rodney Wiggins, an accomplice in the breaking and entering and larceny of Dean's Grocery on 31 January. Wiggins stated that on the evening of 31 January 1977, he, the defendant, and Edwards drove to the grocery store. Wiggins stood watch outside the building while the defendant and Edwards broke into the store. When Wiggins heard a shot several minutes later, he ran away from the scene leaving the defendant and Edwards still in the store. Wiggins told the police about the defendant's involvement several days later, after he was arrested for operating a vehicle under the influence of drugs. Wiggins denied that he was a drug addict, although he admitted that he abused drugs at the time. Wiggins denied that his reason for giving his statement to the police implicating the defendant was that he had been offered a

deal. He pled guilty to charges of armed robbery and breaking and entering with the intent to commit larceny. At the close of State's evidence the defendant's motion to dismiss was denied.

### DEFENDANT'S EVIDENCE

Defendant's brothers testified that prior to 1976 defendant spent twenty years in jail in North Carolina and Florida. After his parole he worked diligently in a print shop owned by his brothers. Defendant's parole officer testified that defendant was gainfully employed until his arrest. Both he and defendant's brothers and sister-in-law testified that the defendant had a good reputation in the community.

Deborah Mailman, an attorney, testified that she met the defendant in 1973 while he was in prison; that he became involved in projects for prisoners' rights; that he had a good reputation. Jean Edwards testified that in the past defendant had urged her husband, Marlon Edwards, to "go straight."

Defendant also presented evidence that on 30 January 1977, he spent the night with Ann McKeon at the Oakden Motel in Charlotte; and that on 31 January 1977, at about 7:00 p.m., the defendant checked into the Twins Motel in Gastonia; that the desk clerk observed defendant's car parked in front of his room until midnight; that she did not see the defendant leave his room between 9:00 p.m. and midnight; and that she saw the defendant on 1 February 1977 at 9:00 a.m. Finally, Clark Self testified for the defendant that Wiggins admitted to him that he had lied about the defendant's participation in the robbery to avoid a drug charge.

*Attorney General Edmisten by Assistant Attorney General Archie W. Anders for the State.*

*C. Frank Goldsmith, Jr., for the defendant appellant.*

CLARK, Judge.

[1] The indigent defendant moved "to represent himself as a jailhouse lawyer." He was advised of his right to have counsel trained in the law to represent him but he filed a written waiver and insisted on proceeding *pro se*. He thereupon filed numerous, voluminous and repetitious pretrial motions, which account for about half of the 511-page record on appeal.

Defendant now assigns as error the trial court's allowing him to represent himself and refusing to appoint standby counsel for him. This assignment of error is without merit. Defendant waived his right to appointed counsel and the record makes it clear that the waiver was knowingly and intelligently made, and that it was granted only after defendant had been informed of the nature of the charges against him and of his right to appointed counsel. Defendant's decision may not have been wise, but it is clear that he had every right to represent himself. *Faretta v. California,* 422 U.S. 806, 45 L.Ed.2d 562, 95 S. Ct. 2525 (1975); *State v. Mems,* 281 N.C. 658, 190 S.E. 2d 164 (1972); N.C. Gen. Stat. 15A-1242. *See* Note, *Self-Representation in Criminal Trials — The Pro Se Defendant,* 9 Wake Forest L. Rev. 265 (1973).

The trial court, although not required to make any special effort to accommodate a defendant proceeding *pro se, State v. Lashley,* 21 N.C. App. 83, 203 S.E. 2d 71 (1974), showed unlimited patience with the defendant throughout the trial. On one occasion defendant requested standby counsel, and the judge agreed to grant the request, but defendant changed his mind and elected not to use standby counsel. When, a few pages further into the record the defendant again requested standby counsel, it is not surprising that the judge refused. If defendant was not confident of his ability to represent himself, he was entitled to counsel appointed for his defense; but he had no right to standby counsel. The appointment of standby counsel is in the sound discretion of the trial court. G.S. 15A-1243; *State v. Brincefield,* 43 N.C. App. 49, 258 S.E. 2d 81, *disc. rev. denied,* 298 N.C. 807, 262 S.E. 2d 2 (1979). We find no abuse of discretion in the case *sub judice.*

Defendant claims that his imperfect understanding of the rules of evidence resulted in his failure to get certain evidence in the record. We would note first that the evidence defendant wished to get in was either irrelevant and immaterial or repetitive. We must also point out that "[w]hatever else the defendant may raise on appeal, when he elects to represent himself he cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance of counsel." *State v. Brincefield,* 43 N.C. App. at 52, 258 S.E. 2d at 84. While we must concede that defendant in his representation of himself left much to be desired, the issue here is not whether defendant had

the skill and training to represent himself adequately but whether "'he knows what he is doing [when he chooses to represent himself] and his choice is made with his eyes open.' *Adams v. United States ex rel McCann*, 317 U.S. at 279, 87 L. Ed. 268, 63 S. Ct. 236, 143 A.L.R. 435." *Faretta v. California*, 422 U.S. at 835, 45 L. Ed. 2d at 582, 95 S. Ct. at 2541. In defendant's motion to proceed *pro se* he cites fifteen years as a jailhouse lawyer drafting legal papers and a previous successful *pro se* defense of a felony charge in Cleveland County Superior Court. There can be little doubt that the defendant had the utmost confidence in himself and made a conscious choice.

Ten of defendant's assignments of error relate to pretrial motions. All are overruled. Defendant made numerous novel motions, including a "Motion for Trial by Videotape"; a "Motion to Question Prospective Jurors Individually With the Simultaneous Use of Hypnosis, Polygraph, and Truth Serum"; a Motion for Attorney's Fees "for Self-Litigant in his Capacity as a Jailhouse Lawyer" (wherein defendant notes that the State ought to pay him $45,000 for his services to himself, although he will settle for $7,000); and a motion to declare North Carolina "Evidential Rules" unconstitutional.

[2]  Though the trial court denied many of defendant's motions, the rulings are not issues on appeal because defendant failed to except to them. An attorney presumably would have known of the necessity to note an exception to the ruling in order to give the trial judge an opportunity to correct the alleged error. G.S. 15A-1446. Though defendant may have been ignorant of this need, his failure to do so constitutes a waiver of the right to assert the alleged error on appeal. G.S. 15A-1446(b).

[3]  Defendant assigns as error the failure of the trial judge to rule upon his motion for appropriate relief. G.S. 15A-1448(a)(4) provides: "If there has been no ruling by the trial judge on a motion for appropriate relief within 10 days after motion for such relief has been made, the motion shall be deemed denied." Under this statute defendant did receive a ruling on his motion. We shall not review the trial judge's denial of the defendant's motion because any error could not possibly prejudice defendant since he is entitled to assert those same errors on this appeal. G.S. 15A-1422(e).

[4] Defendant makes several assignments of error to the trial court's sustaining the prosecutor's objections to certain of defendant's questions on both direct and cross examinations. We note that defendant failed to make an offer of proof, leaving the record void of any indication of what the witness would have answered, so that it is impossible for this Court to determine what evidence was kept out and thus whether the defendant was prejudiced by the court's sustaining of the objection. *See State v. Poolos*, 241 N.C. 382, 85 S.E. 2d 342 (1955); 1 Stansbury's N.C. Evidence § 26 (Brandis rev. 1973). The defendant, thus, has not met his burden of showing that the alleged error was prejudicial. *State v. Robinson*, 280 N.C. 718, 187 S.E. 2d 20 (1972) (per curiam).

[5] Defendant seeks to challenge the long-standing rule in this jurisdiction that the uncorroborated testimony of an accomplice is sufficient to sustain a conviction. *State v. Carey*, 285 N.C. 497, 206 S.E. 2d 213 (1974); *State v. Haney*, 19 N.C. (2 Dev. & Bat.) 390 (1837). That this Court is not disposed to disturb that rule of evidence should be clear to defendant from our ruling against him in his appeal of a related case in which he assigned the same error. *State v. Brooks*, 38 N.C. App. 48, 247 S.E. 2d 38, *appeal dismissed*, 295 N.C. 735, 249 S.E. 2d 804 (1978). Not only would we uphold the rule, but we note also that, in this case, the accomplice's testimony was *not* the only testimony placing defendant at Dean's Grocery. Dean Burgess's testimony that defendant was one of the two men who broke into his store on 31 January 1977 served to corroborate the accomplice's testimony.

[6] Defendant assigns as error the trial court's allowing the police dispatcher to read from the official police records. The dispatcher's testimony was confined to when the alarm system went off in Dean's Grocery and to whom he sent to Dean's Grocery on the night of the robbery. The defendant does not dispute the fact that Dean's Grocery was robbed on the night in question, the testimony was not inconsistent with the defendant's defense, and the defendant failed even to cross-examine the witness regarding his testimony. We can see no possible prejudice arising from the admission of this evidence.

[7] Defendant contends that the identification of the defendant's voice by the witness Burgess was not based upon the witness's recollection of the night of the crime in question but

was based upon his recollection of having heard the defendant's voice when the defendant appeared without counsel involuntarily in Rutherford County Superior Court on a previous occasion to inquire about the appointment of counsel for his defense. The Supreme Court of North Carolina in *State v. Jackson*, 284 N.C. 321, 200 S.E. 2d 626 (1973) stated:

> "Unless barred by constitutional grounds identification by voice is admissible. *State v. Coleman*, 270 N.C. 357, 154 S.E. 2d 485; *State v. Hicks*, 233 N.C. 511, 64 S.E. 2d 871; 1 Stansbury's North Carolina Evidence (Brandis Revision) § 96 (1973). When identification testimony is offered and defendant objects and requests a *voir dire* hearing, the trial judge should hear evidence from both the State and the defendant, make findings of fact, and thereupon rule on the admissibility of the evidence. *State v. Williams*, 279 N.C. 663, 185 S.E. 2d 174; *State v. Stepney*, 280 N.C. 306, 185 S.E. 2d 844. If the trial judge's findings are supported by the evidence they are conclusive upon appellate courts. *State v. Taylor*, 280 N.C. 273, 185 S.E. 2d 677; *State v. Harris*, 279 N.C. 177, 181 S.E. 2d 420."

*Id.*, at 327, 200 S.E. 2d at 630.

The able trial judge in this case held a *voir dire* hearing, made findings of fact, and concluded that Burgess's voice identification was of independent origin and properly admissible. We have carefully examined the record and find ample evidence to support the judge's findings.

There remain the constitutional grounds alluded to in the above quote from *State v. Jackson, supra*. In that case our Supreme Court held that the requirements of due process in the case of voice identification were the same as for identification by sight, *i.e.*, that circumstances surrounding a pretrial confrontation not be "unnecessarily suggestive and conducive to irreparable mistaken identification." *Stovall v. Denno*, 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967 (1967). We note, however, that the issue of whether the pretrial confrontation at the preliminary hearing was unconstitutionally suggestive is not properly before this Court since we hold that the trial judge's conclusion that Burgess's in-court identification was based solely upon the events he heard and saw on the night of the crime was properly supported by the evidence. The identification was therefore not

susceptible to the taint of any possible constitutional impropriety in the pretrial confrontation. *Gilbert v. California*, 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951 (1967). Moreover, both this Court and our Supreme Court have held that the viewing of a defendant at a preliminary hearing is not, of itself, sufficient to taint a witness's subsequent in-court identification absent other circumstances which are so unnecessarily suggestive and conducive to irreparable mistaken identification as to deprive defendant of due process. *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976); *State v. Thomas*, 35 N.C. App. 198, 241 S.E. 2d 128 (1978).

One final comment upon Burgess's voice identification is in order. Burgess stated that defendant's voice was "very familiar to" that of the robber who had told Marlon Edwards to shoot him. From the context of this testimony and his explanation of the term, we believe Burgess used "familiar" for "similar" and that he was suggesting to the jury that defendant's voice was "very *similar* to" that of one of the robbers. Although he refused to identify the defendant positively, he was unshakable in his assessment of defendant's voice as being "very familiar to" the one he had heard at the robbery. We hold that any lack of certainty in defendant's identification went to the credibility of his testimony and not to its admissibility. *See State v. Hicks*, 233 N.C. 511, 518, 64 S.E. 2d 871, 876 (1951), citing Stansbury's N.C. Evidence § 96.

**[8]** Defendant assigns as error the denial of his speedy trial right. We note that there are two bases for defendant's claim that he was entitled to speedy trial. The first is statutory; the second, constitutional.

Defendant alleges that the six-month delay between issuance of the mandate from this Court to retry the defendant and the actual retrial was in excess of the 120-day limit imposed on the courts by the North Carolina Speedy Trial Act, G.S. 15A-701(al)(5). In relying upon the Speedy Trial Act, defendant overlooks the plain language of G.S. 15A-701(al) that its time limit does not apply to a defendant charged with a criminal offense who is arrested, served with criminal process, waives an indictment, or is indicted before 1 October 1978. All the applicable operable events in this case occurred prior to that time; thus defendant may not rely upon the 120-day time limit of G.S. 15A-701(al)(5) which did not take effect until 1 October 1978.

Defendant does not address the issue of whether his Sixth Amendment right to a speedy trial was violated. We note that even had defendant properly brought that issue before us, under the test of *State v. Hill*, 287 N.C. 207, 214 S.E. 2d 67 (1975), we would find no violation. Not only does the delay appear from the record to be for the purpose of allowing defendant to locate his alibi witness, Tonya Huffman, but defendant makes no showing of prejudice and the record reveals none, due to the delay in his retrial.

We have carefully examined the oppressive record on appeal and considered all 53 assignments of error and find that the defendant had a fair trial free from prejudicial error.

No error.

Chief Judge MORRIS and Judge MARTIN (Harry C.) concur.