IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-471

Filed 19 March 2025

Rockingham County, No. 22 CRS 36

STATE OF NORTH CAROLINA

v.

DARRICK LORENZO FULLER

Appeal by Defendant from Judgments entered 7 September 2023 by Judge Martin B. McGee in Rockingham County Superior Court. Heard in the Court of Appeals 23 October 2024.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Kimberley A. D'Arruda, for the State.*

*Darrick Lorenzo Fuller, pro se Defendant-Appellant.*[1]

HAMPSON, Judge.

### **Factual and Procedural Background**

Darrick Lorenzo Fuller (Defendant) appeals from Judgments entered upon jury verdicts finding him guilty of Obstruction of Justice, two counts of Attempting to Access a Government Computer to Defraud, and two counts of Filing False Liens. The Record before us tends to reflect the following:

---

[1] Defendant was appointed counsel from the Appellate Defender's office on 28 December 2023. On 2 September 2024, after all briefs were filed, Defendant discharged his counsel. Defendant is now pro se.

On 7 February 2022, Defendant was indicted for Obstruction of Justice, two counts of Attempting to Access a Government Computer to Defraud, and two counts of Filing False Liens. On 16 February 2022, Defendant's first appearance on the indictment, Defendant allegedly indicated he was waiving his right to the assistance of counsel but refused to sign the waiver form.

The first pretrial hearing was held on 29 August 2023. At the hearing, Defendant provided conflicting responses as to whether he wanted an attorney:

> [Defendant]: May I have a -- yes, an attorney?
>
> [Trial Court]: You want me to appoint a lawyer for you?
>
> [Defendant]: (Unintelligible)
>
> [Trial Court]: All right. And have you -- is a lawyer representing you in any other cases?
>
> [Defendant]: I never asked being charged, but defendant -- defendant needs one.
>
> [Trial Court]: Okay. So you're not represented by any other lawyer at this time; is that right?
>
> [Defendant]: I've never even seen the charging instruments, you know, commercial bill or allegation, I haven't seen one.
>
> [Trial Court]: Okay.
>
> [Defendant]: I don't know what the charges are.
>
> [Trial Court]: I just told you what the charges are, sir.
>
> . . . .
>
> [Trial Court]: Okay. All right. You want me to appoint you a

lawyer; is that what you're telling me?

[Defendant]: I want you to appoint the defendant a lawyer.

[Trial Court]: And you are the defendant at this point is my --

[Defendant]: I'm a secured-party creditor --

[Trial Court]: All right.

[Defendant]: -- third-party intervenor in this matter over title to the book.

The trial court appointed James Reaves, who had represented Defendant in a separate matter a year prior, to be Defendant's counsel.

At the second pretrial hearing on 31 August 2023, the trial court removed Defendant from the courtroom for being disruptive. Reaves told the trial court he had asked Defendant if he wanted Reaves to represent him, to which Defendant allegedly responded, "[n]o way in hell." Reaves told the trial court he did not believe there was anyone in the county "equipped" to work with Defendant.

The trial court informed Defendant it was going to resume the hearing in the afternoon and Defendant would be allowed back in the courtroom if he would not be disruptive. The trial court also warned Defendant that if he continued "to disrupt and obstruct court proceedings," he may forfeit his right to be present in the courtroom for trial. At the afternoon session of the hearing, the trial court concluded Defendant had forfeited his right to counsel based on "inappropriate behavior" and released Reaves from his appointment as Defendant's counsel.

The case came on for trial on 5 September 2023. Defendant was brought into the courtroom handcuffed to a wheelchair because he had been threatening to remove his clothing. The trial court offered to reconsider whether Defendant had forfeited his right to counsel:

> [Trial Court]: And, Mr. Fuller, sir, I'm Judge Marty McGee. We were introduced last week, and as a result of your conduct, I asked that you be removed from the courtroom. And, ultimately, I had a hearing to determine that you had forfeited your rights to counsel. I want to review where we are at this point. I have found that -- I'm happy to reconsider all of the things that we've gone through at this point, but right now, you are representing yourself.
>
> . . . .
>
> [Trial Court]: . . . I had a hearing in your absence because you were disruptive, as you continue to be disruptive, and determined that Mr. Reaves went back and talked with you and that you -- he indicated you were dissatisfied with him, not cooperating with him. I understand that at your previous trial he was your standby counsel but not counsel.
>
> [Defendant]: I believe you gave the defendant Mark C. Keeney. I don't know anything about a James Reaves. You gave the defendant Mark C. Keeney -- Kinney or Keeney or whatever his name is. That's who you gave the defendant. You sent James Reaves to talk to the defendant.
>
> [Trial Court]: Well --
>
> [Defendant]: You didn't -- you didn't give the defendant James Reaves.
>
> [Trial Court]: Well, that's who I appointed, so that's why he came to see you. I see --
>
> [Defendant]: How did you appoint him? I --

[Trial Court]: I see you have somebody's card in your hand. That's who I appointed, and that's who came to see you.

[Defendant]: That's not a fact. That's a lie on the record.

[Trial Court]: All right. Well, I'm doing my best to tell you the information that I know that I believe to be true.

[Defendant]: Okay.

[Trial Court]: So I understand you did not want him to represent you. And you --

[Defendant]: I --

[Trial Court]: I understand you're not being generally cooperative with anybody, let alone him or anybody else or the bailiffs or, frankly, me at this point.

[Defendant]: I am a secured party creditor. I don't need representation from anybody. I don't need to be represented by anybody.

. . . .

[Trial Court]: I understand that you told me that you don't want representation. You said you wanted representation, then you say you don't want representation.

[Defendant]: I said this?

[Trial Court]: Yes, sir. I thought that's what you said.

[Defendant]: When? When?

[Trial Court]: Last -- last time you were speaking.
. . . .

[Trial Court]: So do you want a lawyer?

[Defendant]: The defendant would like a lawyer.

[Trial court]: Okay. You're pointing to the chair with your eyes. Are you saying you want a lawyer?

[Defendant]: I'm saying the defendant would love a lawyer.

[Trial Court]: Would you cooperate?

[Defendant]: The debtor would love a lawyer.

[Trial Court]: Let me say that you have not cooperated with the lawyer that came to you. You haven't cooperated with anyone, it seems, going through this process.

[Defendant]: I haven't spoken to a lawyer, but James Reaves -- I was told from the defendant that James Reaves was not representing.

The trial court again concluded Defendant had forfeited his right to counsel through misconduct:

[Trial Court]: All right. Well, I have found that you have forfeited your right to counsel due to conduct. I've reconsidered that. Under the circumstances, I find that you -- that through your conduct that you have again forfeited your right to counsel. It is clear to the Court that you don't intend to cooperate with your counsel or anyone else.

The State made Defendant a plea offer. Defendant requested counsel again before rejecting the plea offer. The trial court denied Defendant's requests for counsel, explaining it had already concluded Defendant had forfeited his right to counsel. Defendant continued to assert his right to counsel. While the State attempted to discuss the plea offer, Defendant repeatedly interjected, asking if "a bond [was] present". Defendant also accused the State of lying about Defendant's

prior record level and continued to address the State after the trial court admonished him not to. The trial court warned Defendant that if he continued to be disruptive, he would be removed from the courtroom.

The trial court temporarily removed Defendant from the courtroom while it conducted orientation for the prospective jurors. Afterwards, Defendant was brought back into the courtroom. The trial court asked Defendant if he had reconsidered the State's plea offer. Defendant again rejected the plea offer, denying he was "Mr. Fuller" and stating he did not "sign contracts" nor "contract with the government". The trial court reminded Defendant that he could be removed from the courtroom if he was disruptive in front of the jury.

The jury venire was returned to the courtroom for jury selection. The trial court informed the prospective jurors that Defendant was proceeding pro se. During jury selection, Defendant interrupted the State's questioning, so the trial court sent the jury venire out of the courtroom. As the jurors were exiting the courtroom, Defendant made comments that he had been denied his right to counsel:

> [Defendant]: I have the right to speak. That's what they do. Never had the right to an attorney. Ever. Tell them the truth. Tell them how I've been abused.
>
> [Trial Court]: Sir, I asked you to remain quiet.
>
> [Defendant]: Tell them how I've been abused. Tell them how I got these clothes on. You're not talking that. You're not doing that. Hell, no. Hell, no. Huh-uh. You're not telling them the truth. Telling them a bunch of lies.

The State indicated Defendant's outburst was elicited in response to the State asking members of the jury venire whether they were comfortable with the fact that Defendant was representing himself. The State said Defendant made comments to the effect of "Tell them the truth. I haven't been given that opportunity. Tell them about how you beat me." The trial court concluded Defendant had forfeited his right to be present in the courtroom and ordered Defendant be removed, but informed Defendant he could return to the courtroom upon an assurance of improved behavior.

Defendant was brought into the courtroom the next morning of trial. The trial court explained it had instructed the jury not to consider Defendant's removal in determining the issue of guilt. The trial court told Defendant he could return to the courtroom if he followed instructions and assured the trial court he would not "yell[ ] out in front of the jury".

Defendant insisted the trial court provide him "clarity on how you forfeit a right[,]" talked over the trial court, and told the trial court "I don't think you get paid to think. I think you get paid to know law." The trial court concluded Defendant had continued to forfeit his right to counsel and had not provided any assurances of appropriate behavior. Again, Defendant was removed from the courtroom.

The trial continued with Defendant absent. Because the courtroom was not equipped with audio or video conferencing capabilities, the trial court provided written updates to Defendant as the trial progressed. The updates were written by the trial court and delivered by the bailiff. In the first update to Defendant, the trial

court included a copy of the witness list and extended Defendant the opportunity to return to the courtroom "upon assurance of good behavior." The trial court also directed the bailiff to give Defendant the opportunity to respond. The bailiff delivered the documents and reported Defendant had no message for the trial court.

At the end of the morning session on the second day of trial, the trial court provided Defendant with a second update. After receiving the update, Defendant allegedly laughed and said, "I should be over there". The trial court concluded Defendant's comments "[fell] short" of an assurance of good behavior. At the end of the afternoon session, the trial court sent Defendant a third update. After receiving the third update, Defendant allegedly laughed and said "[y]'all are out for vengeance" and "[y]'all are vicious". The bailiff reported Defendant did not say anything about whether he wished to be returned to the courtroom.

Once the State rested its case, the trial court made a motion to dismiss on Defendant's behalf but found there was sufficient evidence to move forward. The trial court sent Defendant a fourth update, along with a draft copy of the jury instructions and the State's request for special instructions. After receiving the fourth update, Defendant allegedly asked when he could return to the courtroom. The bailiff told the trial court he had told Defendant he could return if he behaved. Defendant allegedly responded by asking "What does that mean?" and saying he was "just trying to ask questions." The trial court concluded that because Defendant had not provided any assurance of good behavior, it was not appropriate to return him to the

courtroom.

The State made its closing argument to the jury. Immediately thereafter, the jury received instructions and proceeded to deliberations. The trial court sent Defendant a final update explaining that jury deliberations had begun. The trial court indicated it remained concerned about Defendant's potential behavior:

> [Trial Court]: . . . I still am, frankly, concerned that if he's brought over, that he will still be disruptive. I'm concerned of him saying something to the jury and causing a problem with a potential mistrial even at this late date. He has not provided those assurances that he would act appropriate. And I still, at this stage, would find the trial cannot proceed in an orderly manner if he is not absent from the Court.

The jury reached a verdict ten minutes later. With Defendant still absent from the courtroom, the jury returned guilty verdicts on all charges. The jury was dismissed, and Defendant was returned to the courtroom for sentencing.

At the sentencing hearing, the trial court concluded Defendant had a prior record level of III, based in part upon a Virginia conviction for Identity Theft. The trial court entered two judgments: both Judgments sentenced Defendant to an active punishment of 17 to 30 months in prison. The trial court ordered the first Judgment to run concurrent to Defendant's current prison sentence on unrelated charges, and the second Judgment to run concurrent to the first Judgment. On 21 September 2023, Defendant timely filed Notice of Appeal.

## **Issue**

The issues on appeal are whether the trial court erred by: (I) concluding (A)

Defendant had forfeited his right to counsel, (B) Defendant had forfeited his right to be present in the courtroom for trial, or (C) it would not appoint standby counsel for Defendant; and (II) concluding Defendant's Virginia conviction for Identity Theft under Va. Code Ann. § 18.2-186.3 is substantially similar to the North Carolina offense of Identity Theft under N.C. Gen. Stat. § 14-113.20 (2023) for sentencing purposes.

## Analysis

### I.    Trial Proceedings

Our Courts review alleged violations of a defendant's constitutional rights, including the right to be present during trial and the right to counsel, de novo. *State v. Anderson*, 222 N.C. App. 138, 142, 730 S.E.2d 262, 265 (2012) (citations omitted).

Both the right to be present at trial and the right to counsel may be forfeited. *State v. Montgomery*, 138 N.C. App. 521, 524-25, 530 S.E.2d 66, 69 (2000) (" '[A] defendant who misbehaves in the courtroom may forfeit his constitutional right to be present at trial[.]' ") and *State v. Blakeney*, 245 N.C. App. 452, 460, 782 S.E.2d 88, 93 (2016) ("The second circumstance under which a criminal defendant may no longer have the right to be represented by counsel occurs when a defendant engages in such serious misconduct that he forfeits his constitutional right to counsel."). " 'Unlike waiver, which requires a knowing and intentional relinquishment of a known right, forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right.' "

*Montgomery*, 138 N.C. App. at 524, 530 S.E.2d at 69 (quoting *United States v. Goldberg*, 67 F.3d 1092, 1100 (3d. Cir. 1995)).

A. *Forfeiture of Right to Counsel*

"A finding that a defendant has forfeited the right to counsel requires egregious[,] dilatory[,] or abusive conduct on the part of the defendant which undermines the purposes of the right to counsel . . . ." *State v. Smith*, 292 N.C. App. 656, 660, 899 S.E.2d 394, 397 (2024) (alterations in original) (citations and quotation marks omitted). More specifically, forfeiture of the right to counsel can occur when a defendant's conduct "constitutes a '[s]erious obstruction of the proceedings[,]' " *State v. Jones*, 292 N.C. App. 493, 501, 898 S.E.2d 784, 790 (2024) (quoting *State v. Simpkins*, 373 N.C. 530, 538, 838 S.E.2d 439, 447 (2020)), such as when he refuses to confirm his desire for counsel, refuses to participate, or causes significant delays. *Id.* (citation omitted). " 'Even if a defendant's conduct is highly frustrating,' however, 'forfeiture is not constitutional where any difficulties or delays are not so egregious that they frustrated the purposes of the right to counsel itself.' " *Smith*, 292 N.C. App. at 661, 899 S.E.2d at 398 (alternations and internal quotation marks omitted) (quoting *State v. Atwell*, 383 N.C. 437, 449, 881 S.E.2d 124, 132 (2022)).

In *Montgomery*, this Court examined the issue of forfeiture of the right to counsel as an issue of first impression. 138 N.C. App. at 524, 530 S.E.2d at 69. The Court held "forfeiture results when the state's interest in maintaining an orderly trial schedule and the defendant's negligence, indifference, or possibly purposeful delaying

tactic, combine[ ] to justify a forfeiture of [the] defendant's right to counsel[.]" *Id.* (citation and quotation marks omitted).

In *Smith*, this Court affirmed the trial court's determination the defendant had forfeited his right to counsel where the defendant questioned whether the court could be impartial, refused to cooperate with his attorney, and was "combative and interruptive" during his court appearances. *Smith*, 292 N.C. App. at 661-62, 899 S.E.2d at 398. The Court held that causing "six different attorneys to withdraw" and the "inability to work with court-appointed counsel and insistence that the trial court could not be impartial," amounted to obstreperous conduct resulting in forfeiture of the right to counsel. *Id.*

In *State v. Leyshon*, we held the defendant forfeited his right to counsel for obstructing and delaying the trial proceedings. 211 N.C. App. 511, 517, 710 S.E.2d 282, 287, *appeal dismissed*, 365 N.C. 338, 717 S.E.2d 566 (2011). The defendant refused to sign a waiver of counsel form and stated, "I'm not waiving my right to assistance of counsel[,]" but when the trial court appointed counsel, the defendant stated, "I refuse his counsel." *Id.* at 512, 710 S.E.2d at 285 (quotation marks omitted). The defendant also repeatedly challenged the trial court's jurisdiction instead of answering whether he waived or asserted his right to counsel. *Id.* at 513. The Court stated that by "continually refusing to state whether he wanted an attorney or would represent himself when directly asked by the trial court at four different hearings[,]", the defendant "willfully obstructed and delayed the trial court proceedings" such that

he forfeited his right to counsel. *Id.* at 519, 710 S.E.2d at 288-89.

By contrast, in *Simpkins*, our Supreme Court held the defendant's conduct did not rise to a forfeiture. 373 N.C. at 540, 838 S.E.2d at 449. In doing so, the court recognized

> [i]f a defendant refuses to obtain counsel after multiple opportunities to do so, refuses to say whether he or she wishes to proceed with counsel, refuses to participate in the proceedings, or continually hires and fires counsel and significantly delays the proceedings, then a trial court may appropriately determine that the defendant is attempting to obstruct the proceedings and prevent them from coming to completion. In that circumstance, the defendant's obstructionist actions completely undermine the purposes of the right to counsel.

*Id.* at 538, 838 S.E.2d at 447.

The defendant in *Simpkins* did not obtain counsel before his trial and presented "frivolous legal arguments about jurisdiction" throughout the proceedings. *Id.* at 540, 838 S.E.2d at 448. These actions were not sufficiently egregious to lead the Court to "conclude that the [defendant's] failure to retain counsel was an attempt to delay the proceedings, and certainly not an attempt so egregious as to justify forfeiture of the right to counsel." *Id.*, 838 S.E.2d at 449. The Court also noted that "nothing in the record" suggested the defendant was "rude or disrespectful" to the trial court. *Id.* at 539, 838 S.E.2d at 448.

Here, the Record shows Defendant repeatedly disrupted the trial proceedings. Defendant refused to sign the waiver of counsel form. At the 29 August 2022 pretrial hearing, Defendant repeatedly interrupted the trial court, asking the trial court what

kind of law it was practicing, whether the trial court had a claim against him, and demanding that all charges "be dropped immediately." At the 31 August 2023 pretrial hearing, immediately upon being brought into the courtroom, Defendant again repeatedly asked the trial court if it "had a claim" against him and demanded the charges be dismissed. Defendant refused to stop speaking over all parties in the courtroom, including the trial court.

The trial court appointed Reaves as counsel for Defendant, but Defendant refused to acknowledge or work with him. On the first day of trial, the trial court tried to discuss Defendant's asserted dissatisfaction with Reaves, but Defendant instead argued with the trial court, asserting the trial court had never appointed Reaves as his counsel, and accused the trial court of lying. Defendant later contended Reaves would not "suffice" as counsel and demanded the trial court tell the jury what Reaves had "done". When the trial court asked Defendant to elaborate, Defendant responded, "[Reaves] didn't do anything to me as I stated. It was what [Reaves] done to the defendant."

Although the trial court concluded at the 31 August 2023 hearing that Defendant had forfeited his right to counsel, the trial court gave Defendant the opportunity to have the issue reconsidered. There, Defendant stated "the defendant would like a[n] attorney[.]" Yet, at this same hearing, Defendant stated "I don't need representation from anybody[,]" "I'm the authorized representative for the defendant[,]" and "I'm only here to represent the defendant at this point." Defendant

continued to speak in the third person and deny being the defendant on trial, making statements such as "I was told from the defendant[,]" "The defendant would like a lawyer[,]" and "The debtor would love a lawyer."

Like the defendant in *Smith*, Defendant was combative and interruptive—he insisted the trial court could not be impartial, interrupted and spoke out of turn, threatened to remove his clothing, and refused to directly answer the trial court's questions. And like the defendant in *Leyshon*, Defendant provided conflicting answers as to whether he desired assistance of counsel and refused to work with his appointed counsel.

Likewise, when the trial court attempted to clarify whether Defendant was waiving or asserting his right to counsel, Defendant instead challenged the trial court by asking whether there was a bond and whether the trial court or the State had a claim against him. Based upon the evidence in the Record, we conclude Defendant's actions were sufficiently obstructive and egregious such that they frustrated the purpose of the right to counsel itself. *See Smith*, 292 N.C. App. at 661, 899 S.E.2d at 398 (citation omitted). Accordingly, Defendant forfeited his right to counsel, and the trial court did not err by concluding the same.

B. *Forfeiture of Right to be Present During Trial Phase*

However, our inquiry does not end with Defendant's forfeiture of his right to counsel. The trial court also concluded Defendant forfeited his right to be present at trial and had Defendant removed from the courtroom for the remainder of the trial

proceedings.

Both the United States Constitution and the North Carolina Constitution guarantee a criminal defendant the right to be present at trial. *See* U.S. Const. amend. VI; N.C. Const. Art. I, §§ 19, 23. The right to be present at trial, like the right to counsel, may be forfeited. *See Montgomery*, 138 N.C. App. at 524-25, 530 S.E.2d at 69 (citation omitted). "[A] defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Illinois v. Allen*, 397 U.S. 337, 343, 90 S. Ct. 1057, 1060-61, 25 L. Ed. 2d 353, 359 (1970) (footnote omitted).

Defendant cites several cases wherein courts in other jurisdictions have considered the issue of whether a pro se defendant may be removed from the courtroom during trial. We think *United States v. Mack*, 362 F.3d 597 (9th Cir. 2004) and *People v. Cohn*, 160 P.3d 336, 339 (Colo. Ct. App. 2007) are most relevant to our discussion. In *Mack*, the pro se defendant was removed from the courtroom by the trial court due to his disruptive conduct. 362 F.3d at 599. The trial court had offered to appoint standby counsel but the defendant "refused unless he could have appointed counsel of his choice—a person who was not on the court's standard appointment list." *Id.* Holding the defendant had been denied his right to counsel, the United States Court of Appeals for the Ninth Circuit explained "[a] defendant does not forfeit his

right to representation at trial when he acts out. He merely forfeits his right to represent himself in the proceeding." *Id.* at 601. The Court also observed that when the defendant was allowed to return to the courtroom, "he was required to remain silent and was even told that no objections of his would have any effect whatsoever on the proceedings." *Id.* Thus, "[i]n practical effect, he had been removed as his own counsel and nobody stepped in to fill the gap." *Id.*

Similarly, the defendant in *Cohn* argued his right to counsel was violated when the trial court removed him "from the courtroom at various times during the trial without permitting him to appear by means of video conferencing equipment and without counsel being appointed to represent him in his absence." 160 P.3d at 339. The Colorado Court of Appeals first determined the defendant had forfeited his right to be present in the courtroom due to his disruptive behavior. *Id.* at 341. The Court then asked "whether the trial court, by excluding the pro se defendant from the courtroom, denied his right to counsel." *Id.* The Court determined that under the facts of the case, the defendant had not waived his right to counsel—expressly or by conduct—and his exclusion during portions of jury selection and denial of the opportunity to exercise peremptory challenges was a violation of his right to counsel. *Id.* at 343. Thus, the defendant was "deprived of the presence of counsel at critical stages of the proceedings" and there was "more than a minimal risk that counsel's absence . . . undermine[d] the defendant's right to a fair trial." *Id.* at 342 (citing *Key v. People*, 865 P.2d 822, 825 (Colo. 1994)).

Here, unlike the defendants in *Mack* and *Cohn*, the trial court concluded Defendant had forfeited his right to counsel and did so prior to removing Defendant from the courtroom. Moreover, the facts before us differ from those in *Mack* that would tend to indicate the trial court effectively removed Defendant as his own counsel; here, the trial court maintained an invitation for Defendant to return to the courtroom and participate in the proceedings so long as he reassured the trial court he would no longer be disruptive.

Relatedly, Defendant argues he was removed from the courtroom for "acting in his capacity as his own attorney." Defendant contends he was removed for "objecting to the prosecutor's characterization to the jury of how [he] came to be representing himself." Our review of the Record shows Defendant was not removed for objecting to the State's questioning, but for disrespectful, abusive, and disruptive behavior. The trial court warned Defendant multiple times prior to his removal that if his behaviors continued, he may forfeit his right to be in the courtroom.

In addition to his outburst in front of the jury pool—in which he accused the State of lying, claimed the State had beaten him, and contended he never had the opportunity to have the representation of counsel—Defendant demonstrated persistent disregard for the trial court's orders.

Despite the trial court's admonitions, Defendant continued his behaviors, accusing the trial court and the State of lying, interrupting, and challenging the trial court's authority. Defendant was, thus, "disruptive, contumacious, [and] stubbornly

defiant". *See Allen*, 397 U.S. at 343, 90 S. Ct. at 1061. Therefore, the trial court did not err by concluding Defendant had forfeited his right to be present in the courtroom.

Furthermore, the trial court's actions generally complied with N.C. Gen. Stat. § 15A-1032, which governs the procedures for removing a disruptive defendant from the courtroom:

> (a) A trial judge, after warning a defendant whose conduct is disrupting his trial, may order the defendant removed from the trial if he continues conduct which is so disruptive that the trial cannot proceed in an orderly manner. When practicable, the judge's warning and order for removal must be issued out of the presence of the jury.
>
> (b) If the judge orders a defendant removed from the courtroom, he must:
>
>> (1) Enter in the record the reasons for his action; and
>> (2) Instruct the jurors that the removal is not to be considered in weighing evidence or determining the issue of guilt.

N.C. Gen. Stat. § 15A-1032 (2023). Additionally, "[a] defendant removed from the courtroom must be given the opportunity of learning of the trial proceedings through his counsel at reasonable intervals as directed by the court and must be given opportunity to return to the courtroom during the trial upon assurance of his good behavior." *Id.*

It is true Section 15A-1032 presumes a defendant has counsel: it does not specify how a defendant should be "given the opportunity of learning of the trial proceedings" or who should give the updates if a defendant is pro se. *Id.* Nevertheless, here, the trial court gave Defendant updates on the trial proceedings

through written communications. Further, Defendant was routinely apprised of the opportunity to return to the courtroom and participate in the proceedings by assuring the trial court that his conduct would improve and not be disruptive. The Record indicates Defendant chose not to provide any assurances of better behavior. Indeed, when Defendant was first removed from the courtroom he stated, "I'm not here anyway", and when he was brought into the courtroom on the second morning of trial, he commented that he "didn't ask to come here." Additionally, the jurors were instructed that the removal was not to be considered in weighing evidence, and the trial court entered in the Record the reasons for Defendant's removal. Thus, there was no error in the trial court's compliance with N.C. Gen. Stat. § 15A-1032.

C. *Decision Not to Appoint Standby Counsel*

Ultimately, Defendant concedes the trial court "may have been justified" in concluding he forfeited his right to counsel and to be present in the courtroom. Rather, Defendant argues the trial court erred by failing to appoint standby counsel to act on his behalf and/or failing to provide "some other mechanism" to allow Defendant to participate in his trial. Defendant argues this resulted in a complete deprivation of his right to counsel.

In *State v. Mee*, this Court considered whether the defendant's right to counsel was violated after the defendant "refused to be seated or stay in the courtroom, despite being held in contempt three times," and eventually was removed from the courtroom by the trial court. 233 N.C. App. 542, 558, 756 S.E.2d 103, 112 (2014). The

defendant said he did not want to "participate" in his trial, and he did not want standby counsel to do anything on his behalf. *Id.* at 557-58, 756 S.E.2d at 111-12.

Standby counsel was sent periodically to speak with the defendant, "informing him of his right to be present in court and asking if he had changed his mind about participating in the trial." *Id.* at 558, 756 S.E.2d at 112. The defendant continued to refuse to participate. *Id.* In concluding "the defendant had a fair trial, free of error", this Court noted the defendant "engaged in 'purposeful conduct and tactics to delay and frustrate the orderly processes of our trial courts' that resulted in a forfeiture of his right to counsel." *Id.* at 562-63, 756 S.E.2d at 114-15 (quoting *Montgomery*, 138 N.C. App. at 525, 530 S.E.2d at 69).

Defendant's behavior was similar to the defendant in *Mee*. Although the Court in *Mee* did not address whether the defendant had forfeited or waived his right to be present in the courtroom, we have held there was no error at trial where a defendant voluntarily missed portions of their trial. *See id.*; *State v. Moore*, 290 N.C. App. 610, 893 S.E.2d 231 (2023) (no error where defendant forfeited right to counsel and missed portions of his trial to make phone calls).

Good and prudent practice may necessitate appointing standby counsel in these situations. The role of standby counsel is to assist a pro se defendant, understanding that the defendant "must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in *voir dire*, to question witnesses, and to address the court and the jury at appropriate

points in the trial." *McKaskle v. Wiggins*, 465 U.S. 168, 174, 104 S. Ct. 944, 949, 79 L.Ed.2d 122 (1984).

Indeed, standby counsel was appointed or available in many of our cases where a defendant had forfeited their right to counsel. *See, e.g.*, *State v. Boyd*, 200 N.C. App. 97, 682 S.E.2d 463 (2009); *Montgomery*, 138 N.C. App. 521, 530 S.E.2d 66; *State v. Joiner*, 237 N.C. App. 513, 767 S.E.2d 557 (2014). Even in *Mee*, where the defendant adamantly insisted he did not want standby counsel, standby counsel was nonetheless present. *See Mee*, 233 N.C. App. at 550, 756 S.E.2d at 108.

Here, however, we cannot say the trial court prejudicially erred by not appointing standby counsel. N.C. Gen. Stat. § 15A-1032 does not require the trial court to appoint standby counsel when a defendant is removed from the courtroom. Furthermore, a pro se defendant does not possess a right to standby counsel. *See State v. Brooks*, 49 N.C. App. 14, 18, 270 S.E.2d 592, 596 (1980) ("If [the] defendant was not confident of his ability to represent himself, he was entitled to counsel appointed for his defense; but he had no right to standby counsel. The appointment of standby counsel is in the sound discretion of the trial court." (citing *State v. Brincefield*, 43 N.C. App. 49, 258 S.E.2d 81, *disc. rev. denied*, 298 N.C. 807, 262 S.E.2d 2 (1979))).

Moreover, the Record shows the trial court considered appointing standby counsel, but decided against it because of Defendant's behavior:

> [Trial Court]: I don't find at this point appointing counsel to go

back and forth would be helpful for a number of reasons, one of
which, pretty clear to me, he's not going to cooperate with anyone.
And, second, I think it puts a lawyer in a very difficult position as
to know what conduct -- what the wishes of the defendant would
be.

Consequently, Defendant has failed to show the trial court abused its discretion by

not appointing standby counsel for him. *Id.* at 19, 270 S.E.2d at 596; *Brincefield*, 43

N.C. App. at 52, 258 S.E.2d at 83 ("The appointment of standby counsel for a

defendant is entirely in the sound discretion of the trial judge." (citation omitted));

N.C. Gen. Stat. § 15A-1243 (2023) ("When a defendant has elected to proceed without

the assistance of counsel, the trial judge in his discretion may determine that standby

counsel should be appointed[.]").

II.    Prior Record Level

Defendant also contends the trial court erred in calculating his prior record

level.  Specifically, Defendant argues the trial court should not have concluded

Virginia's identity theft statute, Va. Code Ann. § 18.2-186.3, is substantially similar

to North Carolina's identity theft statute.

"The determination of an offender's prior record level is a conclusion of law that

is subject to *de novo* review on appeal." *State v. Bohler*, 198 N.C. App. 631, 633, 681

S.E.2d 801, 804 (2009) (citation omitted).  "It is not necessary that an objection be

lodged at the sentencing hearing in order for a claim that the record evidence does

not support the trial court's determination of a defendant's prior record level to be

preserved for appellate review." *Id.* (citations omitted).

A prior record level is determined by calculating the sum of the points assigned to each of the offender's prior convictions. N.C. Gen. Stat. § 15A-1340.14(a) (2023). When a prior misdemeanor conviction is for an offense not substantially similar to an offense defined by North Carolina law, the conviction is treated as a Class 3 misdemeanor and does not carry a prior record point for sentencing purposes. *Id.* § 15A-1340.14(b)(5), (e) (2023). However,

> [i]f the State proves by the preponderance of the evidence that an offense classified as either a misdemeanor or a felony in the other jurisdiction is substantially similar to an offense in North Carolina that is classified as a Class I felony or higher, the conviction is treated as that class of felony for assigning prior record level points.

*Id.* § 15A-1340.14(e) (2023).

Virginia's identity theft statute defines the offense as a Class 1 misdemeanor unless certain other criteria are met to elevate the offense to a felony. *See* Va. Code Ann. § 18.2-186.3(D) (2023). The corresponding North Carolina offense is defined as a Class G felony carrying four points for sentencing. N.C. Gen. Stat. § 14-113.22 (2023) ("A violation of G.S. 14-113.20(a) is punishable as a Class G felony[.]"); N.C. Gen. Stat. § 15A-1340.14(b)(3) (2023) (assigning four points to Class G felonies). Thus, to count towards Defendant's prior record level, the State must prove by a preponderance of the evidence the Virginia offense is substantially similar to the North Carolina offense.

"Determination of whether the out-of-state conviction is substantially similar to a North Carolina offense is a question of law involving comparison of the elements of the out-of-state offense to those of the North Carolina offense." *State v. Fortney*, 201 N.C. App. 662, 671, 687 S.E.2d 518, 525 (2010) (citing *State v. Hanton*, 175 N.C. App. 250, 254-55, 623 S.E.2d 600, 604 (2006)). "The Court of Appeals has held that, for purposes of determining 'substantial similarity' under N.C.G.S. § 15A-1340.14(e), a party may establish the elements of an out-of-state offense by providing evidence of the statute law of such state." *State v. Sanders*, 367 N.C. 716, 718, 766 S.E.2d 331, 332 (2014) (citation and quotation marks omitted).

"Further, the Court of Appeals has consistently held that when evidence of the applicable law is not presented to the trial court, the party seeking a determination of substantial similarity has failed to meet its burden of establishing substantial similarity by a preponderance of the evidence." *Id.* (citations omitted).

Here, the Record establishes the State provided the trial court with a prior record level worksheet and a certified copy of Defendant's criminal history. The State also produced a copy of the 2023 version of Virginia's identity theft statute with its statutory history and a copy of the 2023 version of North Carolina's identity theft statute. *See* Va. Code Ann. § 18.2-186.3 (2023) and N.C. Gen. Stat. § 14-113.20 (2023). The trial court found by a preponderance of the evidence the Virginia offense was substantially similar to the North Carolina offense.

Defendant contends the trial court could not have compared the elements of the statutes as required by N.C. Gen. Stat § 15A-1340.14(e) because the Virginia statute has multiple subsections setting out alternate elements of the offense, and thus "we do not know which elements to use in comparing the Virginia statute to the North Carolina statute". Defendant also argues the trial court erred by concluding the offenses were substantially similar because the State provided the 2023 version of the Virginia statute instead of the 2006 version of the Virginia statute—the year Defendant was convicted of the offense. Consequently, Defendant argues, we do not know whether the trial court compared the North Carolina statute to the elements of the Virginia statute as it was written in 2006.

Defendant's first argument fails because both the prior record worksheet and Defendant's criminal history show Defendant was convicted under subsection (B1) of the Virginia statute—"Identity Theft: Obtain ID to Avoid Arrest". And although the State gave the trial court the 2023 version of the Virginia statute, the 2023 statute included its statutory history, demonstrating the differences between the current version of the statute and the statute at the time of Defendant's conviction in 2006. *See State v. Best*, 230 N.C. App. 410, *5, 753 S.E.2d 397 (2013) (unpublished) (trial court did not err by relying on statute with statutory history showing the statutes "were the same version of the statute which were in effect at the time of" the defendant's conviction to conclude offenses were substantially similar).

However, Defendant further argues the statutes are not substantially similar because Virginia's statute can be violated using the identifying information of a "false or fictious person" whereas North Carolina's statute requires the offender to have used the identifying information of a "real person". We agree.

Va. Code Ann. § 18.2-186.3(B1), at the time of Defendant's conviction in 2006, makes it unlawful "for any person to use identification documents or identifying information of another person *or of a false or fictitious person*, whether that person is dead or alive, to avoid summons, arrest, prosecution or to impede a criminal investigation." (emphasis added). The corresponding North Carolina statute punishes anyone who

> knowingly obtains, possesses, or uses identifying information of another person, living or dead, with the intent to fraudulently represent that the person is the other person for the purposes of making financial or credit transactions in the other person's name, to obtain anything of value, benefit, or advantage, or for the purpose of avoiding legal consequences[.]

N.C. Gen. Stat. § 14-113.20 (2023).

A person in Virginia could be guilty of identity theft for using the identity of a fictitious person, whereas a person in North Carolina could not. *See State v. Faucette*, 285 N.C. App. 501, 505-06, 877 S.E.2d 782, 785 (2022) (reversing denial of motion to dismiss charge of identity theft under N.C. Gen. Stat. § 14-113.20 where the defendant provided a fictitious name and birthdate but there was no evidence he "used the identifying information of any other *actual person*, living or dead."

(emphasis added)). Thus, these statutory offenses are not substantially similar for the purposes of N.C. Gen. Stat. § 15A-1340.14(e). *See State v. Davis*, 226 N.C. App. 96, 100, 738 S.E.2d 417, 420 (2013) (holding the Georgia offense of theft by taking is not substantially similar to the North Carolina offense of misdemeanor larceny because a person is guilty of the Georgia offense regardless of whether the taking is permanent or temporary, whereas "temporary deprivation will not suffice" in North Carolina (citation and quotation marks omitted)); *Hanton*, 175 N.C. App. at 258-59, 623 S.E.2d at 606-07 (determining the New York offense of second-degree assault is not substantially similar to the North Carolina offense of assault inflicting serious injury because, unlike the North Carolina offense, the New York offense does not require the defendant cause "serious" physical injury).

The trial court, therefore, erred by concluding the offenses were substantially similar and treating Defendant's Virginia conviction as a Class G felony for purposes of calculating Defendant's prior record level. Without the four points assigned to this conviction, Defendant would have a prior record level of II rather than III. Consequently, we remand solely for resentencing. "At the resentencing hearing, the trial court may consider additional information presented by the State or by defendant regarding defendant's prior offenses." *State v. Henderson*, 201 N.C. App. 381, 388, 689 S.E.2d 462, 467 (2009).

## Conclusion

Accordingly, for the foregoing reasons, we conclude there was no error in

Defendant's trial and remand for resentencing.


NO ERROR AT TRIAL; REMANDED FOR RESENTENCING.

Chief Judge DILLON and Judge TYSON concur.